IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REASSURE AMERICA LIFE INSURANCE COMPANY, SOUTHWESTERN LIFE INSURANCE COMPANY, and VALLEY FORGE LIFE INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>ALPHA CAPITAL GROUP, LLC, LIBERTE CAPITAL GROUP, LLC, and WILLIAM T. WULIGER, as Receiver<br><br>Defendants. | CASE NO.   05-117<br><br>JUDGE<br><br>**MOTION TO TRANSFER CASE TO UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DIVISION** |

Now comes the Defendant, William T. Wuliger as Receiver, *pro se*, and hereby moves this Honorable Court, pursuant to 28 U.S.C. 1404(a) to transfer this matter to the U.S. District Court for the Northern District of Ohio, Western Division, to be placed on the docket of the Honorable David A. Katz. A memorandum in support of this motion follows.

<u>Jurisdiction and Propriety of Venue in Delaware</u>

This case was originally filed by the Plaintiffs in the Superior Court for the State of Delaware in and for New Castle County. The Plaintiffs asserted only one basis supporting venue in Delaware State Court: Defendant Alpha Capital Group, LLC (hereinafter "Alpha"), a now defunct corporation that is currently in receivership per order of the Honorable Judge David A.

1

Katz in *Liberte Capital Group, LLC, et al. v. James A. Capwill, et al.*, 5:99 CV 818, currently pending in the U.S. District Court for the Northern District of Ohio, Western Division (the "Alpha Receivership"), was incorporated in Delaware.[1] The complaint also alleges, purportedly for establishing the state court's jurisdiction over Defendant Liberte Capital Group, LLC (hereinafter "Liberte"), now a defunct Ohio corporation whose assets have been adjudicated as property of another receivership established in *Liberte v. Capwill* (the "General Receivership"),[2] "participated in the unlawful viatication of life insurance policies, certain of which policies, upon information and belief, were issued on the lives of Delaware residents." Defendant William T. Wuliger, a citizen of the State of Ohio, is the court-appointed receiver for both the Alpha and the General Receiverships.[3] In their complaint, Plaintiffs Reassure America Life Insurance Company (hereinafter "Reassure America"), Southwestern Life Insurance Company (hereinafter "Southwestern"), and Valley Forge Life Insurance Company (Hereinafter "Valley Forge") also aver that they are companies organized and existing under the laws of the States of Illinois and Texas and the Commonwealth of Pennsylvania, respectively.

The undersigned submits that the Delaware state court lacked jurisdiction over the defendants and the property at issue, and that subsequently, venue in Delaware state court was improper.[4] The undersigned has had no contact with the forum state, nor is any alleged; rather the Plaintiffs imply that the Delaware state court has personal jurisdiction over him by virtue of

---

[1] Order dated October 29, 2001 (establishing the Alpha Receivership) and appointing William T. Wuliger, attached hereto as Exhibit A.

[2] Orders dated July 15, 1999 (establishing the General Receivership), and November 9, 1999 (adjudicating the life insurance policies at issue as assets of the General Receivership), are attached hereto as Exhibits B and C.

[3] Exhibit A; Order dated August 3, 2004 (transferring authority over the General Receivership to William T. Wuliger), attached hereto as Exhibit D.

[4] Notwithstanding this defect, jurisdiction in this Court is proper based on diversity of citizenship and other grounds pursuant to federal law.

his status as Receiver. But the orders placing Alpha and the assets of Liberte in receivership to the U.S. District Court located in Ohio negated any other basis that jurisdiction in Delaware state court might otherwise be predicated upon. Thus, Alpha's incorporation in Delaware or Liberte's viatication of policies issued to Delaware residents are of no consequence. Moreover, while it is true that Liberte purchased life insurance policies issued on the lives of Delaware residents, none of those policies are at issue in the case at bar.[5] Furthermore, only two Liberte (and no Alpha) viators - out of several hundred - were residents of Delaware, and neither of the policies insuring those viators has ever been alleged to have been procured by fraud.[6] Accordingly, even if the Delaware state court had personal jurisdiction over Alpha (as a Delaware corporation) and the undersigned (as the Alpha Receiver), there would still be no jurisdiction over Defendant Liberte.

In addition, Delaware state court is a *forum non conveniens*, and accordingly, it is an improper venue regardless of whether the court could have excersized personal jurisdiction over the Defendants. Because this case has been removed to federal court, however, the instant motion is predicated on 28 U.S.C. § 1404 and not the doctrine of *forum non conveniens* which would apply if the matter were in the state court.

### Jurisdiction and Propriety of Venue in Ohio

In contrast, the U.S. District Court in Ohio has jurisdiction over all of the parties and the property at issue herein, and venue in that court is proper. At the outset, it must be noted that at least one policy at issue in this suit, Midland Life Insurance Co. policy no. UA7233 insuring the life of Liberte viator Febus Grunberg for $1.5 million is already the focus of a suit pending in the proposed transferee forum: *Javitch, Receiver v. Reassure America Life Ins. Co.*, case no. 3:03

---

[5] Affidavit of Virginia Hale, attached hereto as Exhibit E.

[6] *Id.*

CV 7699. Any claims that Plaintiff Reassure America has against the Receiver (successor in interest to Javitch) regarding that policy constitutes a compulsory counterclaim in that action that has been waived if not asserted therein. In any case, the issues raised in the case at bar, at least as they pertain to the *Grunberg* policy, are not properly before this Court, and that fact alone would support transfer of the entire case to the U.S. District Court in Ohio. As held by the U.S. Supreme Court in <u>Continental Grain Co. v. Barge FBL-585</u>, 364 U.S. 19, 26 (1960), "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent." This Court need not rely solely on the pendency of *Javitch v. Reassure America* to support a transfer of venue to the U.S. District Court in Ohio, however, because there are even more compelling reasons.

As noted *supra*, Defendant William Wuliger, a citizen of Ohio, is the appointed receiver over the assets of both Alpha and Liberte, and accordingly represents both now-defunct entities. While none of the plaintiffs are Ohio residents, presumably all regularly conduct business in Ohio. Furthermore, both Plaintiffs Reassure America and Southwestern have already submitted to the personal jurisdiction of the U.S. District Court in Ohio.[7] Significantly, all three Plaintiffs are owned and/or affiliated with Swiss Re Life & Health, a multinational reinsurance company with offices worldwide, and as noted in the complaint, all are represented by the same counsel.[8]

---

[7] *See* Answer filed by Reassure America in *Javitch, Receiver v. Reassure America Life Insurance Co.,* Case No. 3:03 CV 7699, currently pending in the U.S. District Court for the Northern District of Ohio, Western Division, also before the Honorable David A. Katz, attached hereto as Exhibit F, and Motion to Intervene in *Liberte v. Capwill* filed by Southwestern, attached hereto as Exhibit G.

[8] Excerpt from Swiss Re Annual Report 2003 - Financial Statements listing Reassure America and Southwestern as subsidiaries/equity investees with fully consolidated, 100% affiliation, attached hereto as Exhibit H; Hoover's Fact Sheet on Valley Forge reporting its status as a subsidiary of Swiss Re, attached hereto as Exhibit I; and CNA Licensing Disclosure listing Valley Forge as an asset and CNA February 5, 2004 press release announcing sale of its life insurance business to Swiss Re, attached hereto as Exhibits J and K, respectively.

Notably, in the summer of 2000, Swiss Re acquired Midland Life Insurance Company (of which Plaintiff Reassure America is successor in interest), based in Columbus, Ohio, and, thereby, several of the policies at issue in this case. Accordingly, the district court in Ohio also enjoys specific jurisdiction over parent company Swiss Re.[9] It is also undisputed that the policies at issue and any monetary damages that the Plaintiffs seek to recover in this case have been adjudicated as assets of the receivership estates in *Liberte v. Capwill*.[10] Accordingly, in addition to having personal jurisdiction over the parties, the U.S. District Court in Ohio has *in rem* jurisdiction over the property at issue.

## Transfer of Venue Authorized by Statute

28 U.S.C. § 1404(a) authorizes a U.S. District Court to transfer venue in a civil case to any other District Court where the action might have been brought "for the convenience of parties and witnesses [and] in the interest of justice." While analysis under the statute is similar to an anlaysis pursuant to the doctrine of *forum non conveniens,* courts enjoy much broader discretion in determining whether to transfer venue § 1404. Leonardo Da Vinci's Horse, Inc. v. O'Brien, 761 F. Supp. 1222, 1229 (E.D. Penna. 1991)(*citing* Norwood v. Kirkpatrick, 349 U.S. 29 (1955); National Mortgage Network v. Home Equity Centers, 683 F. Supp. 116 (E.D. Pa. 1988)); Plum Tree v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973). Moreover, the power to transfer venue does not depend on whether the transferring court can assert personal jurisdiction over the parties. In fact, district courts are expressly authorized to transfer a case to cure want of jurisdiction when it would be in the interest of justice to do so. 28 U.S.C. § 1631.

---

[9] Swiss Re press release dated August 3, 2000, attached hereto as Exhibit L.

[10] Exhibit C; Orders dated July 17, 2002 and August 4, 2004 (enumerating every policy in the Alpha and Liberte portfolios owned and controlled by the Receiver), attached hereto as Exhibits M and N, respectively.

Relevant factors for a *forum non conveniens* analysis that may also be considered by a transferring court pursuant to § 1404 include:

> 1. relative ease of access to sources of proof;
> 2. availability of compulsory process for attendance of unwilling witnesses;
> 3. cost of obtaining attendance of willing witnesses;
> 4. possibility of viewing premises, if applicable;
> 5. all other practical problems that make trial of a case easy, expeditious, and inexpensive; and
> 6. "public interest" factors, including the relative congestion of court dockets, choice of law considerations, and the relationship of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation.

National Mortgage Network, 683 F. Supp. at 119 (*citing* Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1947)). While deference is also normally afforded to plaintiffs' choice of forum, such deference is sharply diminished where none of the plaintiffs reside in and/or where none of the operative facts occurred in the district selected by the plaintiffs. *Id.* (*citing* Schmidt v. Leader Dogs for the Blind, Inc., 544 F. Supp. 42, 47 (E.D. Pa. 1982); Fitzgerald v. Central Gulf Steamship Corp., 292 F. Supp. 847, 849 (E.D. Pa. 1968)). *Also see* Leonardo Da Vinci's Horse, 761 F. Supp. at 1229-30 (*citations omitted*).

In the case at bar, consideration of both private and public factors reveals that a transfer of venue is clearly appropriate. As noted herein *supra*, none of the parties are currently located in Delaware. Moreover, as neither Alpha nor Liberte maintained offices in Delaware, and as none of the viators of the policies at issue in this case were Delaware residents,[11] it also appears that none of the operative facts occurred in Delaware, either. In contrast, the parties and witnesses, as well as the documentary evidence are more easily accessible (and in the case of unwilling witnesses, exclusively accessible) in Ohio. The undersigned, his custodian of records, and all of the voluminous records of the Receivership, including all of his records relating to the

---

[11] *See* Exhibit E.

6

policies at issue in this case, are located in Ohio.[12] Notably, since this case involves allegation of fraud on the part of viators, it is unlikely that viator witnesses will willingly testify in court absent compulsory process. The estimated number of pages comprising the Receiver's file on a single policy is approximately 40 to 50 pages.[13] Since the Plaintiffs have listed 31 Liberte policies at issue and 62 Alpha policies at issue, there are likely more than 4,000 pages of documents associated with this case. The costs of forcing the undersigned to defend this suit in Delaware, including the travel expenses of witnesses and parties and costs of copying and or transporting relevant documentary evidence to Delaware is significant. On the other hand, since all three Plaintiffs have already engaged local counsel in Ohio, it is difficult to conceive how the proposed transfer would inconvenience them at all. Accordingly, the burden on the Defendant to defend this case in Delaware is not offset by a corresponding benefit to the Plaintiffs.

Additionally, in light of the likelihood of additional, factually-similar satellite cases evolving from the underlying case, *Liberte v. Capwill*, Judge Katz' extensive knowledge of the facts underlying this matter, as well as his seizure of the property at issue herein, certification of this action to Judge Katz would be in the interest of both comity and judicial economy. The underlying litigation has been pending for almost six years. Property owned and controlled by the receivership estate includes hundreds of life insurance policies, many of them, like the policies at issue in this case, involving claims that the insured fraudulently induced their issuance. Transfer of this case to the docket of Judge Katz would help ensure against inconsistent judgments regarding the validity of such policies in similar satellite cases stemming from *Liberte v. Capwill.*

---

[12] *Id.*

[13] *Id.*

Finally, and perhaps most significantly, thousands of innocent Alpha and Liberte investors who have been defrauded of approximately $170 million (many of whom have been actively following the proceedings in *Liberte v. Capwill* in Toledo, Ohio, and approximately 550 of whom reside in Ohio) have a financial interest in the outcome of this case.[14] It is clear that the investors will never recoup much of their lost investments (current cash assets in the two receiverships total only approximately $19 million), and if the Plaintiffs have their way, the investors' recovery will be even further depleted.[15] Yet, ultimately, it is these investors who must bear the costs of defending this action, which will be unnecessarily escalated unless the case is transferred to the U.S. District Court in Ohio. Accordingly, transfer of this case to Ohio is in the public interest as well as the private interests of the parties hereto.

## Orders of the Receivership Court

In addition to the above, the Plaintiffs' decision to bring suit in Delaware violates both the express language and the spirit of the Orders of the U.S. District Court in Ohio, which were based on long-standing principles of law. The receivership court specifically barred any interested party from initiating suits against the Receiver in other forums absent its consent, holding:[16]

> "[A]ll creditors, claimants, bodies politic, parties in interest, and all sheriffs, marshals, and other officers, and their respective attorneys, servants, agents, and employees, and all other persons, firms or corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against said [entity in receivership], or their property, or against the Receiver in any court. Said entities are further stayed from executing or issuing or causing the execution or issuance out of any Court of any writ, process, summons, attachment,

---

[14] Exhibit E.

[15] *Id.*

[16] *See* Exhibit B, *supra*, and order dated February 13, 2002 amending the appointment order of the Alpha Receiver, attached hereto as Exhibit O.

> subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon, any property owned by or in the possession of the said Receiver, and from doing any act or thing whatsoever to interfere with the Receiver in the discharge of his duties in this proceeding with the exclusive jurisdiction of this Court over said properties and said Receiver."

The receivership court's general prohibition of satellite litigation is supported by the *Barton Principle*, first laid down by the U.S. Supreme Court over 100 years ago and with roots extending back to English common law. Barton v. Barbour, 104 U.S. 126 (1881).

Admittedly, on April 19, 2004, the receivership court issued an order authorizing insurers to litigate their obligations and rights under individual policies within the receivership estates in satellite litigation.[17] However, that order was limited in scope, and the Plaintiffs' complaint clearly exceeds it. In the case at bar, the Plaintiffs are not seeking to merely adjudicate their rights regarding policies held by the Receiver via declaratory judgment; but are also seeking *monetary damages, costs and attorney's fees*. In other words, the Plaintiffs seek a money judgment to be paid out of the cash assets held by the Receiver on behalf of the investors. Accordingly, their complaint is made for the purpose of "enforcing [a] claim ... upon ... property owned by or in the possession of the ... Receiver," which was expressly prohibited by the receivership court, and not just to "assert defenses relative to its policies," which they were authorized to do by the same.[18]

The U.S. District Court in Ohio has asserted *in rem* jurisidiction - not just of the policies owned by the Receiver, but over the cash assets of the receivership estates which the Plaintiffs are seeking to enforce a judgment against as well. Where cases are *in rem* or *quasi in rem*, the court first asserting jurisdiction over the property in question maintains exclusive jurisdiction.

---

[17] Order dated April 19, 2004, attached hereto as Exhibit P.

[18] *Compare* Exhibits B & O to P.

Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456 (1939). This long-standing rule is not just based on principles of comity, but on necessity.

> "If the two suits are *in rem* or *quasi in rem*, so that the court must have possession or control of the *res* in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other."

United States v. Bank of New York & Co., 296 U.S. 463, 477 (1936)(*citing* Penn General Casualty Co. v. Pennsylvania, 294 U.S. 189, 195)(emphasis added). The limited litigation exception authorized by the receivership court does not pertain to any cash assets within the receivership estate, regardless of their original derivation.

Moreover, in addition to violating the express language of the receivership court's orders, the Plaintiffs' complaint also violates the spirit of those orders, which were designed to protect the investors from unnecessary expenses resulting from a proliferation of satellite litigation. This intent was clearly spelled out when, after inadvertently omitting the prohibitive language from the original order appointing the Alpha Receiver, the receivership court issued a second appointment order a few months later to include the language noting, "The objective of the Receivership is to preserve and increase the estate for the benefit of all the creditors, investors, owners and parties to this case."[19] The exception provided for in the court's subsequent April 2004 Order, therefore, which was included by way of explanation for the denial of Plaintiff Southwestern's Motion to Intervene, must be read in the context of the receiverships' stated purpose.[20] Accordingly, it is clear that the court intended to decrease the costs to investors of litigating insurer's issues – not to increase them, and the limited authorization did not give

---

[19] Exhibit O.

[20] Exhibit P.

insurers license to file actions in forums without jurisdiction over the Receiver or the assets in his control.

The receivership court denied Southwestern's request to intervene on the basis that litigating the claims of every insurer in the underlying receivership case "would only serve to expand an already complex action ...stand[ing] on the brink of entering its final phase."[21] In granting authorization to insurers to litigate their rights *vis a vis* policies within the receivership estate in satellite litigation, the receivership court merely intended to permit insurers to litigate their claims without bogging down resolution of the underlying case, and it clearly assumed that any actions filed against the Receiver by insurers would be initiated in a reasonable manner that afforded the Receiver an opportunity to be heard without unnecessarily escalating costs. After all, it would cost the Receiver no more to litigate these issues in a state court in Ohio, than to litigate them in a federal court in Ohio. The receivership court simply did not anticipate that any insurer would seek to gain a strategic advantage over the Receiver or otherwise circumvent its orders by naming a defunct corporation with no interest in the dispute as a defendant so that it could move the litigation to a distant forum.

A receiver has both a right and duty to defend lawsuits against the corporation in receivership. *See* Boston & M.R.R. v. Sullivan, 275 F. 890, 892 (1st Cir. 1921) (*citing* High on Receivers (4th Ed.) Sec. 254c) (a suit that is technically against an entity in receivership is effectively a suit against the receiver which he has a duty to defend). *See also In re* Paramount-Publix Corp., 10 F.Supp. 504, 508 (S.D.N.Y. 1934) (*citing In re* Hudson Electric Power Co., 173 F.934, 956 (N.D.N.Y. 1909); Blackstone v. Everbody's Store, 207 F. 752, 756 (1st Cir. 1913)). Since the undersigned, an appointee of the U.S. District Court, a citizen of Ohio, and the

---

[21] Exhibit P, p. 6.

complete owner of all policies at issue in this case, is the only proper defendant in the case at bar, the Plaintiffs had only two valid forum choices: U.S. District Court for the Northern District of Ohio or an Ohio state court. *See e.g.,* 28 U.S.C. § 1441(b) (providing for removal of a suit from state court to U.S. District Court where parties have diverse citizenship *unless the defendant is a citizen of the state where the action was filed*). Instead, the Plaintiffs disregarded procedure and filed their action in Delaware state court – a forum with which the Receiver has no ties – under the pretext that Delaware is the state of incorporation for one of the two defunct entities that are already the subject of a federal receivership in the U.S. District Court for the Northern District of Ohio. This Court should not condone conduct that was obviously designed to circumvent the receivership court.

WHEREFORE, the undersigned respectfully requests that this Court grant his request and transfer the case to the U.S. District Court for the Northern District of Ohio, Western Division, to the docket of the Honorable David A. Katz.

Respectfully submitted,

WILLIAM T. WULIGER, ESQ. (0022271)
Alpha Receiver, *Pro Se*
1340 Sumner Court
Cleveland, Ohio 44115-2851
PH: (216) 781-7777

## CERTIFICATE OF SERVICE

I hereby certify that on *March 4*, 2005, a copy of the foregoing Motion to Transfer Case to U.S. District Court for the Northern District of Ohio, Western Division, was sent by regular U.S. mail, postage prepaid, to:

Warren T. Pratt, Esq.
David P. Primack, Esq.
Drinker, Biddle & Reath LLP
1100 N. Market Street, Ste. 1000
Wilmington, DE 19801-1254
*Attorneys for Plaintiffs*


Stephen C. Baker, Esq.
Michael Miller, Esq.
Timothy O'Driscoll, Esq.
Drinker, Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103
Of Counsel

WILLIAM T. WULIGER, ESQ. (0022271)

WTW:MotiontoTransfer
WTW:1141