APR 19 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

LIBERTE CAPITAL GROUP, LLC, et al.,

                Plaintiff,             Case No. 3:99 CV 818

  -vs-                                    MEMORANDUM OPINION

JAMES A. CAPWILL, et al.,

                Defendant.

KATZ, J.

This matter comes before the Court on Southwestern Life Insurance Company's ("Southwestern") motion to intervene (Doc. No. 997) in the above-captioned action, the General Receiver's objection (Doc. No. 1006), the objection by the Intervening Plaintiff (Doc. No. 1008), and Southwestern's reply thereto (Doc. No. 1012). Also before the Court is the Alpha Receiver's motion requesting a show cause order regarding Southwestern and its counsel (Doc. No. 2090), as well as responses by Southwestern (Doc. No. 2144) and its counsel, John Schomer (Doc. No. 2141). For the reasons set forth below, both motions are denied.

## BACKGROUND


EXHIBIT P

In October 2000, the Court authorized the General Receiver, Victor M. Javitch, to conduct sales of Liberte policies in furtherance of the best interests of the investors. (Doc. No. 777). This order was entered in the present action as well as the action in which the government seized Liberte's assets. *United States v. Jamieson*, Case No. 3:00CV7312 (Doc. No. 54). Thereafter, the issue of fraudulently procured policies was raised relative to the Court's October 16, 2000 Order regarding the Receiver's authority to sell policies. The government placed its objections on the record regarding these "cleansheeted" policies recommending no further transfers and to have the Receiver rescind or surrender the policies for value. *Jamieson*, Doc. No. 80. In a subsequent Order, the government's recommendations were adopted in part. *Jamieson*, Doc. No. 96. This issue was again revisited in the General Receiver's emergency motion for reconsideration on those policies designated as fraudulent. *Jamieson*, Doc. No. 101.

In the *Jamieson* action, Southwestern served notice that it advised the General Receiver that each of its policies in which the Receivership had an interest was being investigated for fraud. *Jamieson*, Doc.No. 111. In addition, Southwestern reserved its right to any and all defenses to liability as to those policies. *Id.* Subsequently, Southwestern attempted to intervene in the *Jamieson* litigation. *Jamieson*, Doc. No. 119. During a status conference on March 14, 2001, at which counsel for Southwestern was a participant, the Court denied the motion to intervene without prejudice and directed Southwestern to file its motion in the *Capwill*[1] litigation.

On March 26, 2001, Southwestern filed its motion to intervene herein.

---

[1] *Liberte Capital Group, LLC v. Capwill*, Case No. 5:99 CV 818 (N.D. Ohio).

## SOUTHWESTERN'S MOTION TO INTERVENE

*A. Intervention as of Right*

Intervention under the Federal Rules occurs either as of right or by permission. Fed. R. Civ. P. 24. Intervention as of right, listed in Fed. R. Civ. P. 24(a), states as follows:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Sixth Circuit has adopted a four-part test which must be satisfied in order to establish intervention as a matter of right as follows:

> (1) timeliness of the application to intervene; (2) the applicant's substantial legal interest in the case; (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court.

*Stupak-Thrall v. Glickman*, 226 F.3d 467, 471 (6th Cir. 2000) (citations omitted). While the applicant bears the burden of establishing the right to intervene, *Linton v. Comm'n of Health & Env't*, 973 F.2d 1311, 1317 (6th Cir. 1992), Rule 24 is liberally construed and doubts are resolved in favor of the proposed intervenor. *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991). An inquiry under Rule 24(a) requires considering balancing these factors together rather than separately and favors granting intervention where the interests in favor of intervention outweigh those opposed. *See* 6 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 24.03[1][b] (3d ed. 2003). Furthermore, a Rule 24(a) inquiry should focus on the particular facts and procedural posture of the application.

3

*A. Timeliness and Related Issues*

The timeliness aspect of a motion to intervene is "evaluated in the context of all relevant circumstances." *Stupak-Thrall v. Glickman* 226 F.3d at 472-473, citing *Jansen v. City of Cincinnati,* 904 F.2d 336, 340 (6th Cir. 1990). The Sixth Circuit in *Stupak-Thrall* reiterated five factors to be considered in this analysis as follows:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Id.*

In consideration of the first prong, at the time Southwestern filed for intervention, this litigation was nearly two years old. While it was apparent that satellite litigation would ensue as an outgrowth of the present action, the General Receiver's mandate here was to marshal assets with an eye toward ultimate disbursement for the benefit of the investors.

Turning to the purpose for which intervention is sought, Southwestern asserts it is "solely on the issues concerning the Southwestern Life Insurance policies" and the General Receiver's "attempt[] to sell void and canceled policies." Motion at p. 4. However, this Court's Order of April 13, 2001, addressed these concerns, in part, in the following manner:

> The issue before this Court is of the right of the Receiver to market and sell policies asserted to have been fraudulently obtained to sophisticated investors who are given appropriate warning of the defense which may be asserted by the insurers. The Court is aware of the contentions of the Government and Southwestern that the sale of such policies would continue to perpetuate a fraud on the insurance companies and thus

4

adversely impact insurers. This order does not deprive the insurers of any defenses available against the Receiver or any transferee of the Receiver.

*Jamieson*, Doc. No. 149. Moreover, in its Order, the Receiver was prohibited from marketing "any policy of which a court of competent jurisdiction has determined was issued as a result of fraud or has otherwise invalided or voided." *Id.* Specifically, the Order expressly states it is not an adjudication on the rights of an insurer or the validity of the legal position of a party or non-party. As Southwestern is not precluded from otherwise bringing actions or asserting defenses relative to its policies, its purpose in this litigation does not strike this Court as necessary.

As to the length of time preceding their motion that the proposed intervenors should have known about their interest in the case, the Receiver states Southwestern was aware of this litigation at least a year in advance of its motion. The prejudice to the original parties would be significant if Southwestern were allowed to intervene since it would only serve to unduly delay the case just as it stands poised to enter its final stage. Moreover, intervention by Southwestern would open the door and other insurers would surely want their positions advanced as well.

The unusual circumstances[2] in this action militate against intervention since the aim of this action, at this juncture of the proceedings, is the continued marshaling of assets with an eye towards distribution to the victimized investors. Again, to allow Southwestern to inject issues which can be addressed in other forums would not serve the interests of the litigants herein.

---

[2] The claims initially asserted against Defendant Capwill and his entities have essentially been resolved with the General Receiver marshaling assets into the Receivership Estate for the benefit of the investors. In addition, the Alpha Receiver is under a similar mandate albeit aimed at those policies held for the benefit of the Alpha investors. The Liberte investors have been certified as a class and are represented by class counsel herein. At this juncture of the proceedings, disbursement remains the final phase to this litigation.

5

Having considered the five factors, this Court is of the view that intervention by Southwestern would only serve to expand an already complex action which is five years old and stands on the brink of entering its final phase, disbursement. In light of the fact that Southwestern is not prohibited from asserting its position and/or prior adjudications on its policies against those seeking to recover on them, intervention into the present action would not serve the interests of justice and only delay a final resolution for the present parties. Based upon these considerations, the Court finds Southwestern has not satisfied the timeliness requirement under Rule 24.

B. *Other Factors*

In addition, Southwestern's substantial legal interests are not impaired as the April, 2001 Order, indicated the Court was:

> ... *not* adjudicating the respective rights of ...any insurer regarding any policy, in particular those policies sought to be marketed as to which the Government asserts a defense of fraud on the insurance company may be asserted to avoid payment. Those issues as to specified policies may be the subject of future litigation in this or other courts of competent jurisdiction.
> Further, the Court is *not* making a determination of the legal propriety or validity of the positions of the parties (and non-parties) impacted by this ruling. The court is aware of the contention of the Investors and Alpha that, as between innocent parties, the investors and the insurers, the latter were in [a] better position to determine the risk and should bear the loss. This Court through this ruling is *not* adjudicating that issue.

*Jamieson*, Doc. No. 149 (emphasis in original). On the basis of these statements, Southwestern's ability to protect its interests is not impaired. Where there is a failure to meet any one of the four criteria for intervention as of right, intervention must be denied. *Stupak-Thrall*, 226 F.3d at 471.

In sum, as Southwestern has failed to demonstrate its entitlement to intervene in this action under Fed. R. Civ. P. 24(a), its motion to intervene is denied.

ALPHA RECEIVER'S MOTION FOR A SHOW CAUSE ORDER

The Alpha Receiver moves for an order requiring Southwestern and its attorney, John Schomer, to show cause why they should not be held in contempt of court. Both Southwestern and Schomer have filed separate responses.

A. *Standard*

A primary purpose of civil contempt sanctions is to enforce compliance with a court order. *See Downey v. Clauder*, 30 F.3d 681, 685 (6th Cir. 1994). Where the court finds that sanctions are appropriate, they may be imposed "solely to coerce future compliance with the court's order or to compensate for injuries resulting from noncompliance." *N.L.R.B. v. Howard Baer, Inc.*, 99 F.3d 1139, 1996 WL 490347, *17 (6th Cir. 1996) (Unpublished).

The party alleging civil contempt must prove by clear and convincing evidence that the respondent violated the court's prior order. *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998). The court must find that the party in contempt "violated a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Rolex Watch U.S.A., Inc.* 74 F.3d 716, 720 (6th Cir. 1996) (citation omitted).

B. *Discussion*

In this instance, the Alpha Receiver accuses Southwestern and its counsel with interfering with the functioning of the Receivership Estate and for failure to comply with this Court's orders. Specifically, the Receiver charges that following this Court's Order of July 17, 2002, Southwestern was recalcitrant at providing the necessary information and continues to wrongfully withhold recission dollars relative to Ross

7

and Patrick policies. The Alpha Receiver's memorandum and affidavit chronicle his efforts to gather information and recission monies relative to these two policies.

A review of the Court's July 17, 2002 Order indicates that it was premised on the purpose of allowing the Alpha Receiver to gather information from the relevant insurance companies and advised the insurers as follows:

> (1) That the Alpha Receiver, William T. Wuliger, Esq., has full, complete and absolute right, title and interest to such policies as reflected in the attachment;
>
> (2) Those insurance carriers whose names appear in the attachment shall recognize the authority of the Alpha Receiver, William T. Wuliger, as absolute owner and beneficiary of the policies set forth in the attachment, to act as full owner and custodian of those policies with the authority to sell, transfer, convey or assign rights to said policies howsoever the Alpha Receiver deems fit, consistent with this Court's orders.
>
> (3) Those insurance carriers, whose names appear in the attachment, shall provide information necessary for the Alpha Receiver to assess the value of the portfolio. The information, at a minimum, shall include: (a) the named insured; (b) the name of the owner of the policy; (c) the status of the policy; (d) the fact amount and value of the policy. The insurance carriers shall provide this information within a reasonable time to the Receiver and shall forward information relative to requests to the Receiver's agent, NorthEast Escrow Services LLC at 12550 Chillicothe Road, Chesterland, Ohio 44026 with respect to any of the policies of insurance on the attached list.
>
> (4) In the event that any insurance carrier fails to comply fully with this Order, the Court will entertain the Alpha Receiver's motion for contempt and that company will be subject to appropriate sanctions for said contempt, as determined by this Court.
>
> (5) The Alpha Receiver shall serve a certified copy of this Order and attachment thereto to the relevant insurance carrier from whom information is sought.

(Doc. No. 1658.)

The Alpha Receiver is correct insofar as the insurers were directed to provide specific information relative to the insurance policies identified in the attachment to the Order. Alpha's Receiver does not

specify exactly what information Southwestern has refused to supply regarding the Patrick policy. However, Southwestern is correct that the July 17, 2002 Order does not require the insurers to turn over recission dollars. Most telling on this point is the Alpha Receiver's own memorandum opposing Southwestern's motion for intervention:

> The intervening plaintiffs respectfully submit that this is not the appropriate forum to resolve the question of whether Southwestern is free to disregard or rescind these insurance policies and whether, in the event of such disregard or recission, it is somehow entitled to refuse to return the accumulated premiums. Rather, those are issues which should be resolved - as they have in the past - in satellite litigation limited to those issues at such time as those issues actually arise.

(Doc. No. 1008, p.8.)

Therefore, as the Alpha Receiver has not established Southwestern or attorney Schomer's failure to comply with this Court's prior orders, his motion is not well taken. As noted in the discussion denying intervention, this Court has previously ruled it would *not* adjudicate the rights of insurers and that they retain defenses which may be asserted in satellite litigation. Those are issues to be resolved outside of this case *sub judice* as properly noted by the Alpha Receiver above.

## CONCLUSION

For the reasons aforementioned reasons, Southwestern's motion to intervene (Doc. No. 997) is denied. Additionally, the Alpha Receiver's motion for a show cause order (Doc. No. 2090) is denied.

IT IS SO ORDERED.

                                          *s/ David A. Katz*
                                          DAVID A. KATZ
                                          U. S. DISTRICT JUDGE