# SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)

*1*

COUNTY: NEW CASTLE ☒    KENT ☐    SUSSEX ☐

Civil Case Code: __CDEJ__

Civil Action Number: _FILED 05C-01-120_ _CHT_

Civil Case Type: __Declaratory Judgement__

*(SEE PAGE TWO FOR CIVIL CASE CODE & CIVIL CASE TYPE)*

FILED 05C-01-120
PROTHONOTARY          CHT
2005 JAN 19 AM ...

---

**Caption:**

Reassure America Life Insurance Company,

Southwestern Life Insurance Company,

and Valley Forge Life Insurance

Company, Plaintiffs,


v.

Alpha Capital Group, LLC, Liberte

Capital Group, LLC, and William T.

Wuliger, Defendants

---

**Name and Status of Party filing document:** Reassure America Life Ins. Co., Southwestern Live Ins. Co., & Valley Forge Life Ins. Co. –Plaintiffs

**Document Type:** (e.g., COMPLAINT; ANSWER WITH COUNTERCLAIM)
Complaint

Non-Arbitration ☒            eFile ☐

*(CERTIFICATE OF VALUE MAY BE REQUIRED)*

Arbitration ☐    Mediation ☐    Neutral Assessment ☐

DEFENDANT (CHECK ONE)    ACCEPT ☐    REJECT ☐

JURY DEMAND    YES ☐    No ☒

TRACK ASSIGNMENT REQUESTED (CHECK ONE)

EXPEDITED ☐    STANDARD ☒    COMPLEX ☐

---

**ATTORNEY NAME(S):**

Warren T. Pratt, David P. Primack

**ATTORNEY ID(S):**
Del. Bar #4334, #4449

**FIRM NAME:**
Drinker Biddle & Reath LLP

**ADDRESS:**
1100 N. Market Street, Ste. 1000

Wilmington, DE 19801-1254

**TELEPHONE NUMBER:**
302-467-4200

**FAX NUMBER:**
302-467-4201

**E-MAIL ADDRESS:**
david.primack@dbr.com

---

IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS

NONE

EXPLAIN THE RELATIONSHIP(S):



OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT:

NONE


*(IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGE.)*

---

Revised 9.17.03

*1-20-05*

FILED
PROTHONOTARY
2005 JAN 13  AM 11: 37

**IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE**

**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| REASSURE AMERICA LIFE INSURANCE COMPANY, | ) | |
| SOUTHWESTERN LIFE INSURANCE COMPANY, and | ) | |
| VALLEY FORGE LIFE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. *05C-01-120 CHT* |
| | ) | |
| v. | ) | |
| | ) | **Non-Arbitration** |
| ALPHA CAPITAL GROUP, LLC | ) | |
| LIBERTE CAPITAL GROUP, LLC, | ) | |
| and WILLIAM T. WULIGER, as Receiver, | ) | **Declaratory and Monetary** |
| | ) | **Relief Requested** |
| Defendants. | ) | |

## PRAECIPE

TO:    Sharon D. Agnew
       Prothonotary of the Superior Court
       New Castle County Courthouse
       500 North King Street
       Wilmington, DE 19801

**PLEASE ISSUE A SUMMONS** to the Sheriff of New Castle County commanding him

to summon and direct the below-named defendants to appear and answer the Complaint in this

cause, by delivering a copy of the Complaint pursuant to the following:

**Alpha Capital Group, LLC**                  **Liberte Capital Group, LLC**
**c/o Corporate Agents, Inc.**                **c/o PHS Corporate Services, Inc.**
**2711 Centerville Road, Suite 400**          **1313 N. Market Street, Suite 5100**
**Wilmington, Delaware 19808**                **Wilmington, DE 19801**

(4) *writs issued*
@ *$856.84*00
(2) *NC*

*# 155 830.00*
*# 157 830.00*
*# 158 835.00*
*Shricr*

WM\3448\1

**The Secretary of State of Delaware**
as the registered agent pursuant to 10 Del. C. §3104 for:
**William T. Wuliger, as Receiver**
**Wuliger, Fadel & Beyer**
**The Brownell Building**
**1340 Sumner Court**
**Cleveland, OH  44115**

January 12, 2005

**The Secretary of State of Delaware**
as the registered agent pursuant to 10 Del. C. §3104 for:
**Liberte Capital Group, LLC**
**c/o J. Richard Jamieson, Jr.**
**104 North Summit Street**
**Suite 4000**
**Toledo, OH 43604**

Warren T. Pratt (No. 4334)
David P. Primack (No. 4449)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street, Suite 1000
Wilmington, DE  19801
(302) 467-4200

Attorneys for Plaintiff

WM\3448\1

FILED
PROTHONOTARY

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

2005 JAN 13  AM 11: 37

| | | |
|---|---|---|
| REASSURE AMERICA LIFE INSURANCE COMPANY, | ) | Civil Action No. |
| SOUTHWESTERN LIFE INSURANCE COMPANY, and | ) | |
| VALLEY FORGE LIFE INSURANCE COMPANY, | ) | 05C-01-120 |
| | ) | CHT |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Non-Arbitration |
| | ) | |
| ALPHA CAPITAL GROUP, LLC, | ) | Declaratory and |
| LIBERTE CAPITAL GROUP, LLC, and | ) | Monetary Relief |
| WILLIAM T. WULIGER, as Receiver, | ) | Requested |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1.      The plaintiffs in this action are insurers ("Insurers") that issued policies of life

insurance, some of which were issued on the lives of Delaware residents, and that were

purportedly sold to Alpha Capital Group ("Alpha"), a Delaware limited liability company, and to

Liberte Capital Group, LLC ("Liberte"), in so-called viatical transactions.

2.      The policies purportedly sold to Alpha (the "Alpha Policies") and the policies

purportedly sold to Liberte (the "Liberte Policies") are within the scope of assets comprising,

respectively, the "Alpha Receivership" and the "General Receivership," which were created and

consolidated by the court in the matter captioned Liberte Capital Group v. Capwill, et al., Case

No. 5:99 CV 818 (N.D. Ohio), collectively referred to as the "Consolidated Receivership."

3.      Based upon information and belief, a substantial portion of the Alpha Policies and

the Liberte Policies were procured through fraud and/or with an intent to viaticate.

4.      The Insurers are therefore seeking a declaration that, with respect to these

policies, the Insurers have no further obligations and are entitled to damages.

## PLAINTIFFS

5.     Reassure America Life Insurance Company, formerly known as Royal Maccabees Life Insurance Company ("Royal Maccabees"), which was in turn formerly known as Maccabees Life Insurance Company ("Maccabees Life") and Maccabees Mutual Life Insurance Company ("Maccabees Mutual"), is the successor by merger to Allied Life Insurance Company ("Allied Life") and The Midland Life Insurance Company ("Midland") (collectively referred to as "Reassure America"). Reassure America is a life insurance company organized and existing under the laws of the State of Illinois and is in the business of providing life insurance coverage. Upon information and belief, Reassure America and/or its predecessors in interest issued life insurance policies that are within the scope of the Consolidated Receivership.

6.     Southwestern Life Insurance Company ("Southwestern Life") is a life insurance company organized and existing under the laws of the State of Texas. Southwestern Life is in the business of providing life insurance coverage. Upon information and belief, Southwestern Life issued life insurance policies that are within the scope of the Consolidated Receivership.

7.     Valley Forge Life Insurance Company ("Valley Forge Life") is a life insurance company organized and existing under the laws of the Commonwealth of Pennsylvania. Valley Forge Life is in the business of providing life insurance coverage. Upon information and belief, Valley Forge Life issued life insurance policies that are within the scope of the Consolidated Receivership.

## DEFENDANTS

8.     Alpha is a limited liability company organized under the laws of Delaware. Upon information and belief, Alpha was a licensed viatical settlement provider.

9.     Liberte is a limited liability company organized under the laws of Ohio, and upon information and belief, with a registered agent located in Delaware at PHS Corporate Services,

2

Inc., 1313 North Market Street, Suite 5100, Wilmington, Delaware 19801. As described in further detail below, Liberte participated in the unlawful viatication of life insurance policies, certain of which life insurance policies, upon information and belief, were issued on the lives of Delaware residents. Upon information and belief, Liberte was a licensed viatical settlement provider.

10.     William T. Wuliger, sued herein in his official and representative capacity, is an individual who has been appointed Receiver for the Consolidated Receivership.

## VENUE

11.     Venue is proper in this Court, as Alpha is organized under the laws of Delaware.

## FACTUAL BACKGROUND

### The Viatical Industry

12.     A viatical contract involves the sale of a life insurance policy by an ill person (known within the industry as a "viator") at a price discounted from the face value of the policy.

13.     The viatical industry emerged in the late 1980s and early 1990s as a means for terminally ill policyholders, principally those suffering from AIDS, to convert their life insurance policies into cash. Viatical companies typically pay between 55% and 80% of the face value of the policies to viators, depending on such factors as life expectancy and prevailing interests rates.

14.     Throughout the 1990s, the viatical industry grew. In 1989, when the industry was in its infancy, aggregate face amounts of viatical settlements were estimated to be approximately 2 million dollars. Today, it is estimated that this market has grown to well in excess of 100 billion dollars.

### The Viatical Industry and Certain Well-Documented Practices

15.     Unfortunately, as the number of viatical companies increased, various improper

3

practices began to permeate the industry. Many viatical companies began to engage in practices that created two separate classes of victims: (1) investors who purchased viaticated policies based on fraudulent misstatements by viatical companies, and (2) insurers who issued life insurance policies that were procured by fraud and/or with an intent to viaticate. Many investigations, enforcement actions, and court proceedings have focused on remedying the frauds perpetrated against the investor class of victims. This Complaint, however, seeks to remedy the wrongs perpetrated against the Insurers referenced herein.

### Fraud Against the Insurers

16.    One type of fraud against insurers, in the context of viatical transactions, that has resulted in the issuance of various policies is known as "clean-sheeting." Clean-sheeting occurs when a life insurance applicant commits fraud by intentionally omitting or misrepresenting his/her medical status prior to attempting to effectuate a viatical transaction.

17.    There are various ways that policies are procured with an intent to viaticate including, but not limited to, by way of "straw man" transactions and "wet ink" transactions.

18.    "Straw man" transactions refer to the acquisition of life insurance policies by individuals who have an intent to viaticate the policy. Such transactions include situations where viatical companies recruit or solicit otherwise uninsurable individuals to provide false information to insurers, by impersonating the putative insureds and submitting their own medical information or test samples in place of the medical information or test samples of the putative insureds. This information is provided to the insurers for the sole purpose of obtaining a life insurance policy, which will be sold in the secondary market. Thus, the typical goal of straw man schemes is to generate life insurance policies not for the legitimate purpose of insuring risk, but to create an inventory that can be sold by viatical companies to investors.

4

19.    "Wet ink" transactions involve the sale of an insurance policy only days or weeks after issuance. These transactions are referred to as a wet ink transactions because the "ink" on the contract is still "wet" when the policy is transferred.

20.    One common method of concealing a wet ink transaction is to change the beneficiary designation to an employee or officer of the broker or viatical company.

21.    Another method of concealing a wet ink transaction is through phony collateral assignments. In a typical collateral assignment scenario, an insured secures a loan from a third party by making a collateral assignment of the policy. Where a wet ink transaction is being fraudulently concealed, however, the insured executes a collateral assignment to create the appearance that the insured is securing a loan, yet the insured does not actually incur any indebtedness.

22.    Another method of concealing a wet ink transaction is through "warehousing," which is the delay of the reporting of the transaction until after the expiration of the "contestable period" in the policy.

23.    The Insurers believe and contend that policies procured with an intent to viaticate are void or voidable because the life insurance contracts lack an insurable interest. In the absence of an insurable interest, such contracts are the theoretical equivalent of wagering on the death of the insured and as such are against public policy.

## Liberte's and Alpha's Involvement in the Viatical Industry

24.    Liberte was in the business of marketing viatical settlements. Necessary to the successful marketing of viatical settlements is an escrow agent responsible for such things as safekeeping investors' funds, paying policy premiums, tracking viators, and filing death claims.

5

Viatical Escrow Services ("VES") agreed to act as escrow agent on behalf of Liberte. James A.
Capwill ("Capwill") was at all relevant times the managing director of VES.

25.     On April 8, 1999, Liberte brought an action, captioned <u>Liberte Capital Group v.</u>
<u>Capwill, et al.</u>, Case No. 5:99 CV 818 (U.S.D.C., N.D. Ohio) ("Capwill Action"), against VES,
Capwill, and Capital Fund Leasing ("Capital Fund"), another entity operating under the direction
of Capwill. In its original complaint, Liberte alleged that the defendants in the Capwill Action
wrongfully manipulated $17,000,000 from Liberte's escrow account. To prevent further
depletion of the escrow account, Liberte sought and obtained an attachment order and a
temporary restraining order which froze all of the assets of VES and Capital Fund.

26.     On April 12, 1999, Alpha and Integrity Partners Management LLC ("Integrity
Partners"), a holding company for Alpha's investment dollars, requested intervention in the
Capwill Action on the ground that they also used VES as their escrow agents. On May 20, 1999,
the court granted intervention to Alpha and Integrity Partners. Because of the breadth of the
attachment order and temporary restraining order placed upon VES, Alpha alleged that it would
not be able to meet its then-existing contractual obligations.

27.     Beginning in the middle of 1999 and continuing through November of 2000, a
number of the Insurers began rescinding certain of the Liberte Policies and certain of the Alpha
Policies for fraud and/or for acquisition with an intent to viaticate by obtaining declaratory
judgments to this effect throughout the State of Ohio.

28.     In October 2000, Victor Javitch, then the General Receiver for the Liberte
Policies, began asking the court for approval to sell certain of the Liberte Policies.

29.     On February 16, 2001, the United States Department of Justice ("DOJ") and
Southwestern Life filed responses in the Capwill Action opposing the General Receiver's motion

for the right to sell certain of the Liberte Policies. See DOJ's Response to Receiver's Motion for Reconsideration of the Right to Sell Fraudulently Obtained Life Insurance Policies, Document No. 961, Liberte Capital Group v. Capwill, et al., Case No. 5:99 CV 818 (N.D. Ohio). In its Response, the DOJ averred that, upon information and belief, *at least 556 of the 994 Liberte Policies had been obtained by fraud.* See id., at ¶ 2.

30.     The court's April 2001 order in the Capwill Action prohibited the General Receiver from selling any Liberte Policy that had been ordered void by a court, or any policy for which an Insurer sent a notice of rescission to the General Receiver. The court order did permit the General Receiver to sell other Liberte Policies only on the condition that the Receiver provide notice of fraud to subsequent purchasers. As this condition was such a cloud on the title of these policies, they were rendered virtually unmarketable.

31.     The April 2001 order also provided that the court was not depriving "the insurers of any defenses available against the Receiver or any transferee of the Receiver;" that "it [was] not adjudicating the respective rights of . . . the receiver . . . or any insurer regarding any policy . . . ;" and that "[t]hose issues as to specified policies may be the subject of future litigation in this or other courts of competent jurisdiction."

32.     Since August 3, 2004, William T. Wuliger has been the Receiver for the Consolidated Receivership, which includes both the Liberte Policies and the Alpha Policies.

### Liberte Policies Issued by Plaintiff Insurers

33.     The Insurers believe and contend that many of the Liberte Policies were obtained through fraud and/or with an intent to viaticate. Indeed, upon information and belief, Liberte may have assisted with certain of this illegal activity.

7

34.    To date, the Insurers have not yet been able to ascertain the full extent to which the Liberte Policies were tainted by the corrupt practices referenced above. Nevertheless, as noted above, the DOJ conducted an investigation of Liberte's viatical business practices, and concluded that each of the Insurers may have been victimized by Liberte's fraudulent practices. Furthermore, the investigation conducted by the DOJ confirmed that many of the Liberte Policies issued were tainted by fraud in the application process.

35.    Below is a list, organized alphabetically by the original issuing Insurer, which details the Liberte Policies at issue in this litigation (the "Liberte Policies at Issue"). Upon information and belief, the Liberte Policies at Issue may have been procured by fraud and/or procured with an intent to viaticate and, if so, should be declared as such.

| Insurer | Policy No. | Policy Date | Benefit |
|---------|-----------|-------------|---------|
| Allied Life Insurance Co. | 259112 | 7/1/97 | $100,000 |
| Allied Life Insurance Co. | 280445 | 8/27/98 | $100,000 |
| Allied Life Insurance Co. | 280632 | 8/28/96 | $100,000 |
| Midland Life Insurance Co. | UA7233 | 8/1/98 | $1,500,000 |
| Midland Life Insurance Co. | W997114 | 6/20/98 | $1,000,000 |
| Midland Life Insurance Co. | UA-6929 | 9/22/98 | $1,000,000 |
| Midland Life Insurance Co. | W70803 | 7/13/97 | $980,000 |
| Royal Maccabees Life Insurance Co. | 4312867 | Unknown | $84,000 |
| Southwestern Life Insurance Co. | 2000059148 | 7/14/98 | $95,000 |
| Southwestern Life Insurance Co. | 1000037681 | 7/8/98 | $93,000 |
| Southwestern Life | 2000058238 | 6/12/98 | $75,000 |

8

| Insurer | Policy No. | Policy Date | Benefit |
|---|---|---|---|
| Insurance Co. | | | |
| Southwestern Life Insurance Co. | 2000057844 | 6/1/98 | $75,000 |
| Southwestern Life Insurance Co. | 1000033247 | 12/8/97 | $93,700 |
| Southwestern Life Insurance Co. | 30038330 | Unknown | $25,000.00 |
| Southwestern Life Insurance Co. | 900090615 | 12/23/87 | $250,671 |
| Southwestern Life Insurance Co. | 2000054404 | 2/3/98 | $90,000 |
| Southwestern Life Insurance Co. | 2000050908 | 9/22/97 | $50,000 |
| Southwestern Life Insurance Co. | 2000059144 | 7/14/98 | $95,000 |
| Southwestern Life Insurance Co. | 2000057173 | 5/7/98 | $95,000 |
| Southwestern Life Insurance Co. | 2000057169 | 5/7/98 | $95,000 |
| Southwestern Life Insurance Co. | 1000039903 | 10/1/98 | $95,000 |
| Southwestern Life Insurance Co. | 2000060099 | 8/13/98 | $75,000 |
| Southwestern Life Insurance Co. | 2000049028 | 8/7/97 | $1,600,000 |
| Southwestern Life Insurance Co. | 2000058345 | 8/28/98 | $75,000 |
| Southwestern Life Insurance Co. | 2000057170 | 5/7/98 | $95,000 |
| Southwestern Life | 2000054119 | 2/4/98 | $95,000 |

9

| Insurer | Policy No. | Policy Date | Benefit |
|---------|-----------|-------------|---------|
| Insurance Co. | | | |
| Southwestern Life Insurance Co. | 2000049048 | 7/11/97 | $38,000 |
| Southwestern Life Insurance Co. | 2000051340 | 10/14/97 | $250,000 |
| Valley Forge Life Insurance Co. | VIBA001418 | 3/5/96 | $100,000 |
| Valley Forge Life Insurance Co. | ULBA000027 | 4/23/98 | $300,000 |
| Valley Forge Life Insurance Co. | E000028029 | 5/1/97 | $10,000 |

## Alpha Policies Issued by Plaintiff Insurers

36.    The Insurers believe and contend that many of the Alpha Policies were obtained through fraud and/or with an intent to viaticate.  Indeed, upon information and belief, Alpha may have assisted with this illegal activity.

37.    To date, the Insurers have yet to ascertain the full extent to which the Alpha Policies were affected by the corrupt practices referenced above.  Alpha's receiver, William T. Wuliger, however, has expressly admitted in at least 33 Complaints filed in the United States District Court for the Northern District of Ohio that "[t]he bulk of the viaticals that Alpha . . . purchased from brokers . . . were found to be fraudulent."  See, e.g., Compl., ¶ 31, filed in Wuliger v. The Serenity Shop, No. 1:04cv1501 (U.S.D.C., N.D. Ohio).

38.    Further, upon information and belief, the Alpha receiver also filed at least 100 additional complaints in which he alleged that "[t]he bulk of the viaticals that Alpha purchased in

10

the course of its business were found to be fraudulent." See, e.g., Compl. ¶ 19 filed in Wuliger v. Hansen, No. 1:03cv1708 (U.S.D.C., N.D. Ohio).

39.     In addition, the Court of Common Pleas for Summit County, Ohio, has already determined that a policy issued on the life of Jeffrey D. Ross, which was one of the Alpha Policies, was procured based upon Mr. Ross' willful and wrongful misrepresentation of his health status, or otherwise, "cleansheeted." See Security Life and Trust Ins. Co. v. Estate of Jeffery D. Ross, Case No. CV 2000 05 2223 (Court of Common Pleas, Summit County, Ohio).

40.     Below is a list, organized alphabetically by the original issuing Insurer, which details the Alpha Policies at issue in this litigation (the "Alpha Policies at Issue"). Upon information and belief, the Alpha Policies at Issue may have been procured by fraud and/or with an intent to viaticate and, if so, such be declared as such.

| Insurer | Policy No. |
| --- | --- |
| Allied Life Insurance Co. | 0282278 |
| Allied Life Insurance Co. | 0282757 |
| Allied Life Insurance Co. | IN0282101 |
| Allied Life Insurance Co. | IN0279246 |
| Allied Life Insurance Co. | IN0279589 |
| Allied Life Insurance Co. | IN0281888 |
| Allied Life Insurance Co. | IN0281887 |
| Allied Life Insurance Co. | IN0282341 |
| Midland Life Insurance Co. | 1502260345 |
| Midland Life Insurance Co. | 1502265032 |
| Midland Life Insurance Co. | 1501375131 |

11

| Insurer | Policy No. |
|---|---|
| Reassure America Life Insurance Co. | IN0279589 |
| Reassure America Life Insurance Co. | 280445 |
| Reassure America Life Insurance Co. | 0259112 |
| Reassure America Life Insurance Co. | 0280632 |
| Royal Maccabees Life Insurance Co. | 04152844 |
| Royal Maccabees Life Insurance Co. | 4312-867 |
| Southwestern Life Insurance Co. | 2000055831 |
| Southwestern Life Insurance Co. | 2000057175 |
| Southwestern Life Insurance Co. | 1000039641 |
| Southwestern Life Insurance Co. | 2000058194 |
| Southwestern Life Insurance Co. | 2000055020 |
| Southwestern Life Insurance Co. | 2000060618 |
| Southwestern Life Insurance Co. | 2000058176 |
| Southwestern Life Insurance Co. | 2000058174 |
| Southwestern Life Insurance Co. | 2000057174 |
| Southwestern Life Insurance Co. | 200059150 |
| Southwestern Life Insurance Co. | 2000058419 |
| Southwestern Life Insurance Co. | 1000038597 |
| Southwestern Life Insurance Co. | 2000058173 |
| Southwestern Life Insurance Co. | 2000059248 |
| Southwestern Life Insurance Co. | 2000058171 |
| Southwestern Life Insurance Co. | 2000059696 |
| Southwestern Life Insurance Co. | 2000058258 |
| Southwestern Life Insurance Co. | 1000039747 |

12

| Insurer | Policy No. |
|---|---|
| Southwestern Life Insurance Co. | 2000060643 |
| Southwestern Life Insurance Co. | 2000060619 |
| Southwestern Life Insurance Co. | 2000049355 |
| Southwestern Life Insurance Co. | 2000057473 |
| Southwestern Life Insurance Co. | 1000039642 |
| Southwestern Life Insurance Co. | 2000060642 |
| Southwestern Life Insurance Co. | 2000058193 |
| Southwestern Life Insurance Co. | 2000061991 |
| Southwestern Life Insurance Co. | 1000039707 |
| Southwestern Life Insurance Co. | 1000039640 |
| Southwestern Life Insurance Co. | 2000059147 |
| Southwestern Life Insurance Co. | 1000039919 |
| Southwestern Life Insurance Co. | 1000039639 |
| Southwestern Life Insurance Co. | 2000053426 |
| Southwestern Life Insurance Co. | 2000057472 |
| Southwestern Life Insurance Co. | 2000059943 |
| Southwestern Life Insurance Co. | 100039708 |
| Southwestern Life Insurance Co. | 530915 |
| Southwestern Life Insurance Co. | 200005171 |
| Southwestern Life Insurance Co. | 1000039756 |
| Southwestern Life Insurance Co. | 2000058420 |
| Southwestern Life Insurance Co. | 0030211010 |
| Southwestern Life Insurance Co. | 2000056904 |
| Valley Forge Life Insurance Co. | VING008993 |

13

| Insurer | Policy No. |
|---|---|
| Valley Forge Life Insurance Co. | VIBA012012 |
| Valley Forge Life Insurance Co. | V10R007173 |
| Valley Forge Life Insurance Co. | ULAT00056 |

41.    The following policies represent all Alpha Policies at Issue titled in the name of NorthEast Escrow Services, LLC:

| Insurer | Policy No. |
|---|---|
| Royal Maccabees Life Insurance Co. | 4312-867 |

42.    The following policies represent all Alpha Policies at Issue titled in the name of the Alliance for Recovery, Inc.:

| Insurer | Policy No. |
|---|---|
| Reassure America Life Insurance Co. | 0259112 |
| Reassure America Life Insurance Co. | 0280632 |

43.    The following policies represent all Alpha Policies at Issue whose titled owner is presently unknown:

| Insurer | Policy No. |
|---|---|
| Allied Life Insurance Co. | 0282278 |
| Reassure America Life Insurance Co. | 280445 |
| Royal Maccabees Life Insurance Co. | 04152844 |
| Southwestern Life Insurance Co. | 2000055831 |
| Southwestern Life Insurance Co. | 2000057175 |
| Southwestern Life Insurance Co. | 1000039641 |

14

| Insurer | Policy No. |
|---|---|
| Southwestern Life Insurance Co. | 2000058194 |
| Southwestern Life Insurance Co. | 2000060618 |
| Southwestern Life Insurance Co. | 2000058174 |
| Southwestern Life Insurance Co. | 2000057174 |
| Southwestern Life Insurance Co. | 2000058419 |
| Southwestern Life Insurance Co. | 1000038597 |
| Southwestern Life Insurance Co. | 2000058173 |
| Southwestern Life Insurance Co. | 2000060643 |
| Southwestern Life Insurance Co. | 2000057473 |
| Southwestern Life Insurance Co. | 2000060642 |
| Southwestern Life Insurance Co. | 0030211010 |
| Southwestern Life Insurance Co. | 2000061991 |
| Southwestern Life Insurance Co. | 1000039707 |
| Southwestern Life Insurance Co. | 1000039640 |
| Southwestern Life Insurance Co. | 2000053426 |
| Southwestern Life Insurance Co. | 2000057472 |
| Southwestern Life Insurance Co. | 2000059943 |
| Southwestern Life Insurance Co. | 100039708 |
| Valley Forge Life Insurance Co. | V10R007173 |
| Valley Forge Life Insurance Co. | ULAT00565 |

44.    The following policies represent all Alpha Policies at Issue which are titled in the name of surrogates.

15

| Insurer | Policy No. |
|---|---|
| Allied Life Insurance Co. | 0282757 |
| Allied Life Insurance Co. | IN0279589 |
| Allied Life Insurance Co. | IN0281888 |
| Allied Life Insurance Co. | IN0281887 |
| Allied Life Insurance Co. | IN0282341 |
| Southwestern Life Insurance Co. | 2000055020 |
| Southwestern Life Insurance Co. | 2000058176 |
| Southwestern Life Insurance Co. | 200059150 |
| Southwestern Life Insurance Co. | 2000059248 |
| Southwestern Life Insurance Co. | 2000058171 |
| Southwestern Life Insurance Co. | 2000059696 |
| Southwestern Life Insurance Co. | 2000058258 |
| Southwestern Life Insurance Co. | 100039747 |
| Southwestern Life Insurance Co. | 2000060619 |
| Southwestern Life Insurance Co. | 2000049355 |
| Southwestern Life Insurance Co. | 1000039642 |
| Southwestern Life Insurance Co. | 2000058193 |
| Southwestern Life Insurance Co. | 2000059147 |
| Southwestern Life Insurance Co. | 1000039919 |
| Southwestern Life Insurance Co. | 1000039639 |
| Southwestern Life Insurance Co. | 2000056904 |
| Southwestern Life Insurance Co. | 2000057171 |
| Southwestern Life Insurance Co. | 1000039756 |
| Southwestern Life Insurance Co. | 2000058420 |

| Insurer | Policy No. |
|---------|-----------|
| Valley Forge Life Insurance Co. | VING008993 |
| Valley Forge Life Insurance Co. | VIBA012012 |

### COUNT I
### DECLARATORY JUDGMENT/ESTOPPEL
### ALPHA'S CONDUCT

45.     Plaintiffs hereby incorporate each of the averments set forth in the preceding paragraphs as if set forth herein at length.

46.     In issuing the various policies, the Insurers follow underwriting protocols and guidelines for deciding whether a policy of life insurance should be issued. During the underwriting process, the Insurers make this decision based upon, among other things, whether the party applying for the insurance has an insurable interest in the proposed insured, whether the proposed owner has a need for the policy based upon certain financial guidelines, and whether the proposed named insured meets established criteria relating to insurability.

47.     The veracity of the information provided by the insured during the underwriting process is critical to the Insurer's decision whether to accept or reject an application.

48.     Moreover, in those instances where a proposed insured's health is compromised, but the proposed insured is still within established underwriting guidelines for insurability, information ascertained during the underwriting process is critical to determining a rating class for the proposed insured. The rating class, in turn, affects the amount of premium that the Insurer will charge for the policy.

49.     Because the information provided by the insured during the application process is critical to the Insurer's underwriting decision, applicants must provide truthful information. If an insured makes material misrepresentations in his or her application or deliberately provides

17

answers that are false, the policy is void or voidable, and the Insurer may be entitled to rescind the policy on the basis of fraud in the application and/or lack of an insurable interest.

50.    As noted above, upon information and belief, numerous Alpha Policies were procured from the Insurers by fraud and/or with an intent to viaticate.

51.    Upon information and belief, Alpha may have effectuated, assisted, encouraged, known about, or otherwise condoned such fraud and/or policy acquisition with an intent to viaticate, thus placing the Insurers at risk of incurring substantial monetary damages resulting from non-meritorious claims on policies that would not have been issued but for the improper activity.

52.    To the extent that the Alpha Policies issued by the Insurers were procured by fraud and/or with an intent to viaticate and/or to the extent Alpha effectuated, assisted, encouraged, knew about, or otherwise condoned the procurement of such life insurance policies through fraud and/or with an intent to viaticate, Alpha and its Receiver, William T. Wuliger, should be estopped from relying on any "incontestable clause" with respect to the payment of benefits on any such policies.

WHEREFORE, the Insurers respectfully request that this Honorable Court enter judgment in their favor, awarding them a declaration that Alpha may not rely on any incontestable clause in any of the Alpha Policies at Issue, and any such other and further relief that the Court deems appropriate, including costs and reasonable attorneys' fees.

**COUNT II**
**DECLARATORY JUDGMENT/ESTOPPEL**
**LIBERTE'S CONDUCT**

53.    Plaintiffs hereby incorporate each of the averments set forth in the preceding paragraphs as if set forth herein at length.

18

54.    In issuing the various policies, the Insurers follow underwriting protocols and guidelines for deciding whether a policy of life insurance should be issued.  During the underwriting process, the Insurers make this decision based upon, among other things, whether the party applying for the insurance has an insurable interest in the proposed insured, whether the proposed owner has a need for the policy based upon certain financial guidelines, and whether the proposed named insured meets established criteria relating to good health.

55.    The veracity of the information provided by the insured during the underwriting process is critical to an Insurer's decision to accept or reject an application and/or lack of an insurable interest.

56.    Moreover, in those instances where a proposed insured's health is compromised, but the proposed insured is still within established underwriting guidelines for insurability, information ascertained during the underwriting process is critical to determining a rating class for the proposed insured.  The rating class, in turn, affects the amount of premium that the Insurer will charge for the policy.

57.    Because the information provided by the insured during the application process is critical to the Insurer's underwriting decision, it is essential for applicants to provide truthful information.  If an insured makes material misrepresentations in his or her application, the policy is void or voidable, and the Insurer may be entitled to rescind the policy on the basis of fraud in the application and/or lack of an insurable interest.

58.    As noted above, upon information and belief, numerous Liberte Policies were procured by fraud and/or with an intent to viaticate.

59.    Upon information and belief, Liberte may have effectuated, assisted, encouraged, known about, or otherwise condoned such fraud and/or policy acquisition with an intent to

19

viaticate, thus placing the Insurers at risk of incurring substantial monetary damages resulting from non-meritorious claims on policies that would not have been issued but for the improper activity.

60.     To the extent that the Liberte Policies issued by the Insurers were procured by fraud and/or with an intent to viaticate and/or to the extent Liberte assisted, encouraged, knew about, or otherwise condoned the procurement of such life insurance policies through fraud and/or with an intent to viaticate, Liberte and the General Receiver, William T. Wuliger, should be estopped from relying on any "incontestable clause" with respect to the payment of benefits on any such policies.

WHEREFORE, the Insurers respectfully request that this Honorable Court enter judgment in their favor as hereinafter set forth, awarding them a declaration that Liberte may not rely on any incontestable clause in any of the Liberte Policies at Issue, and any such other and further relief that the Court deems appropriate, including costs and reasonable attorneys' fees.

### COUNT III
### FRAUD – MATURED POLICIES HELD BY ALPHA

61.     The Insurers hereby incorporate each of the averments set forth in the preceding paragraphs as if set forth herein at length.

62.     Upon information and belief, the Insurers have paid death benefit claims on Alpha Policies that, as previously alleged, were procured by fraud and/or with an intent to viaticate.

63.     Upon information and belief, Alpha may have effectuated, assisted, known about, or otherwise condoned such fraud and/or acquisition with an intent to viaticate.

64.     To the extent that the Insurers have paid any death benefit claims on Alpha Policies that were procured by fraud and/or with an intent to viaticate and/or to the extent that Alpha or its affiliated brokers and agents effectuated, assisted, encouraged, knew about, or

20

otherwise condoned such fraud and/or policy acquisition with an intent to viaticate, the Insurers are entitled to be indemnified by Alpha.

65.     Further, the Insurers have incurred additional damages resulting from, <u>inter alia</u>, previously paid proceeds on Alpha Policies that were procured by fraud.

WHEREFORE, the Insurers respectfully request that this Honorable Court enter judgment in their favor, awarding them damages and/or indemnification for the payment of policy proceeds on Alpha Policies at Issue that were procured by fraud and/or with an intent to viaticate, and any such other relief that this Court deems appropriate, including costs and reasonable attorneys' fees.

## COUNT IV
## FRAUD – MATURED POLICIES HELD BY LIBERTE

66.     The Insurers hereby incorporate each of the averments set forth in the preceding paragraphs as if set forth herein at length.

67.     Upon information and belief, the Insurers have paid death benefit claims on Liberte Policies that, as previously alleged, were procured by fraud and/or with an intent to viaticate.

68.     Upon information and belief, Liberte may have effectuated, assisted, known about, or otherwise condoned such fraud and/or acquisition with an intent to viaticate.

69.     To the extent that the Insurers have paid any death benefit claims on Liberte Policies that were procured by fraud and/or with an intent to viaticate and/or to the extent that Liberte or its affiliated brokers and agents effectuated, assisted, encouraged, knew about, or otherwise condoned such fraud and/or policy acquisition with an intent to viaticate, the Insurers are entitled to be indemnified by Liberte.

21

payments on Liberte Policies at Issue procured through fraud, and any such other relief that the

Court deems appropriate, including costs and reasonable attorneys' fees.

**COUNT VII**
**SET-OFF OF ALPHA'S AND LIBERTE'S IMPROPER GAINS**

81.    The Insurers hereby incorporate each of the averments set forth in the preceding

paragraphs as if set forth herein at length.

82.    To the extent Insurers should become obligated to pay any legitimate death

benefit claims on any Alpha Policies or any Liberte Policies, and/or to the extent that the Insurers

should become obligated to incur any expenses related thereto, Insurers are entitled to a

declaratory judgment that no proceeds will be due or owing on any such policies to the extent

that the Insurers are entitled to a common law set off as a result of all other damages previously

alleged herein.

WHEREFORE, the Insurers respectfully request that this Honorable Court enter

judgment in their favor, awarding them a declaration of a common law right of set off as to all

other damages previously alleged herein, and any such other relief that the Court deems

appropriate, including costs and reasonable attorneys' fees.

24

Respectfully submitted,

_____
Warren T. Pratt  (4334)
David P. Primack  (4449)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street, Suite 1000
Wilmington, DE  19801-1254
302-467-4200

OF COUNSEL

Stephen C. Baker
Michael J. Miller
Timothy J. O'Driscoll
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103
215-988-2700