IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

REASSURE AMERICA LIFE INSURANCE )
COMPANY, *et al.,* )          CASE NO. 01:05 CV 117 (GMS)
                         )
         Plaintiffs, )        **MEMORANDUM IN SUPPORT**
                         )    **OF MOTION TO DISMISS**
    v. )
                         )
ALPHA CAPITAL GROUP, LLC, *et al.,* )
                         )
         Defendants. )

R E C E I V E D

MAR 2 4 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

I.   INTRODUCTION

The Plaintiffs' Complaint must be dismissed pursuant to Rule 12(b)(1) and (2) of the Federal Rules of Civil Procedure.[1]  The policies at issue in the Complaint are assets of the U.S. District Court for the Northern District of Ohio, Western Division, pursuant to two receiverships established in *Liberte Capital Group, LLC, et al. v. James A. Capwill, et al.,* Case No. 5:99 CV 818, which is currently pending before the Honorable David A. Katz.   That Court has specifically enjoined all interested parties from filing suit against the Receiver or the entities under his control, or from asserting any claim against the property in his custody or that otherwise interferes with his administration of the Receivership estates.  Accordingly, this Court lacks jurisdiction to preside over this dispute.

Additionally, the entire Complaint is subject to dismissal pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure because it fails to state a claim upon which relief can be granted and alleges fraud without requisite particularity.  The Plaintiffs have failed to allege any facts to support a finding that the specific policies at issue in this case were

---

[1] The Defendant submits that the complaint is also subject to dismissal pursuant to Rule 12(b)(3) for improper venue, but he is not seeking that relief as he has already petitioned the court for the alternative and less severe remedy of transfer of venue to a proper forum pursuant to 28 U.S.C. § 1404.

fraudulently obtained and/or that the Defendants Alpha Capital Group, LLC ("Alpha") and Liberte Capital Group, LLC ("Liberte") were complicit in any fraud perpetrated by the insureds against the Plaintiffs herein. Finally, Counts III, IV and VII of the complaint also fail to state a claim because the Receivership Court has already ruled that any objection to the validity of a policy in the receivership must be raised prior to the policy's maturity or it is waived. That ruling is *res judicata* regarding the policies at issue in Counts III, IV and VII. Accordingly, the Plaintiffs are not entitled to a refund of death benefits that have already been paid to the Receivership estate regardless of any wrongful conduct, including fraud.

II.    STATEMENT OF FACTS

Defendants Alpha and Liberte were viatical settlement companies in the business of purchasing life insurance benefits from elderly or terminally ill insureds (known as viators) for a portion of the face value and re-selling the death benefits to individual investors for a profit. Both companies utilized the services of James Capwill, an escrow agent, to facilitate the transactions, maintain the policies within their inventories, process death claims, and distribute funds. Mr. Capwill owned and operated Viatical Escrow Services, LLC ("VES"), Capital Fund Leasing ("CFL"), and various other business entities.

In April 1999, Liberte filed suit against Capwill, VES, and CFL in the U.S. District Court for the Northern District of Ohio, alleging that Capwill had misappropriated funds in his custody. Alpha intervened in the action a short time later. On July 15, 1999, the U.S. District Court in Ohio appointed a receiver over VES and CFL (the "General Receivership").[2] The General Receivership was subsequently expanded to include Capwill's personal assets, various other Capwill-controlled entities, and "all interests in any and all insurance policies funded by [Liberte

---

[2] July 15, 1999 Order attached hereto as Exhibit A.

and Alpha] investors" then in Capwill's control.[3]  Over the course of the next year, it became

clear that in addition to converting investors' funds to his own personal use, Capwill had also

commingled Alpha and Liberte funds in his control, making it difficult, if not impossible, to trace

the funds to their ultimate source.  While Alpha continued to operate for some time after the

establishment of the General Receivership, it, too, eventually became insolvent and was placed

into a separate receivership by the U.S. District Court in Ohio on October 29, 2001 (the "Alpha

Receivership") under the control of Defendant William Wuliger.[4]  On August 3, 2004, the

Receivership Court transferred authority over the General Receivership to Mr. Wuliger as well.[5]

In the appointment order, the Receivership Court specifically enjoined third parties from

asserting any claim against the Receivership entities, the General Receiver, or the property in his

custody, or from engaging in any conduct that would interfere with the administration of the

Receivership estate.[6]  The same language was later adopted with respect to Alpha and the Alpha

Receiver.[7]  The latter Order reads:

> "[A]ll creditors, claimants, bodies politic, parties in interest, and all sheriffs,
> marshals, and other officers, and their respective attorneys, servants, agents, and
> employees, and all other persons firms and corporations be, and they hereby are,
> jointly and severally, enjoined and stayed from commencing or continuing any
> action at law or suit or proceedings in equity to foreclose any lien or enforce any
> claim against said Alpha Capital Group, LLC, its property or against the Alpha
> Receiver in any court.  Such entities are further stayed from executing or issuing
> or causing the execution or issuance out of any Court of any writ, process,
> summons, attachment, subpoena, replevin, execution, or other process for the
> purpose of impounding or taking possession of or interfering with, or enforcing
> any claim or lien upon, any property owned by or in the possession of the said
> Receiver, and from doing any act or thing whatsoever to interfere with the
> Receiver in the discharge of his duties in this proceeding with the exclusive
> jurisdiction of this Court over said properties and said Alpha Receiver."[8]

---

[3] November 9, 1999 Agreed Order, p. 3, attached hereto as Exhibit B.
[4] October 29, 2001 Order attached hereto as Exhibit C.
[5] August 3, 2004 Order attached hereto as Exhibit D.
[6] *See* Exhibit A.
[7] February 13, 2002 Order attached hereto as Exhibit E.
[8] *Id.*, p.2.

At the same time that *Liberte v. Capwill* was pending, the federal government was investigating fraud in the viatical industry. The investigation resulted in a companion case to the Receivership action captioned *United States v. J. Richard Jamieson, et al.,* Case No. 3:00 CV 7312, also presided over by Judge David A. Katz in the U.S. District Court for the Northern District of Ohio. As a result of its investigation, the government concluded that many of the policies in the Receiver's custody had been fraudulently obtained, and it sought to enjoin then-General Receiver Victor Javitch from marketing any policies that it had designated as fraudulent. Some of those policies were issued by the Plaintiffs in the case at bar, and Plaintiff Southwestern submitted a brief in opposition to the General Receiver's request for permission to market the policies. Essentially, both the government and Southwestern argued that selling policies that had been designated as fraudulent would violate public policy and perpetuate a fraud committed against the insurers. The Receiver, in contrast, argued that policies which had past the contractual contestability period were enforceable regardless of fraud, and should therefore be available for sale. Representatives of the investors and Alpha argued that insurers were better equipped to discover the fraud, had assumed the risk (indeed they have set premium schedules to compensate therefor), and should therefore bear the loss as opposed to the innocent investors.

In an Order dated April 13, 2001, Judge Katz authorized the Receiver to market the policies, but only to the extent that the policies had not already been invalidated by a court of competent jurisdiction or rescinded or cancelled by the insurer.[9] The Receiver was also ordered to notify potential purchasers if the government and/or insurer had advised him of potential fraud with respect to a particular policy.[10] The Receivership Court specifically addressed

---

[9] Order dated April 13, 2001, attached hereto as Exhibit F.
[10] *Id.*

Southwestern's concerns, stressing that the insurers' right to defend against the validity of any given policy would not be affected by transfer:

> "[This Court] is *not* adjudicating the respective rights of any investor, the Receiver, any purchaser of policies from the Receiver, or any insurer regarding any policy, in particular those policies sought to be marketed as to which the Government asserts a defense of fraud on the insurance company may be asserted to avoid payment. Those issues as to specific policies may be the subject of future litigation in this or other courts of competent jurisdiction.

***

> **"This order does not deprive the insurers of any defenses available against the Receiver or any transferee of the Receiver."**[11]

This language has been construed as an exception to the general bar on satellite litigation and relied on by the Receiver and insurers alike to file declaratory actions in both state and federal courts in Ohio to determine the validity of policies within the receivership portfolio without first obtaining the express consent of the Receivership Court. In April 19, 2004, in the context of denying Plaintiff Southwestern's <u>Motion to Intervene</u> in *Liberte v. Capwill,* the U.S. District Court for the Northern District of Ohio reaffirmed its 2001 ruling, holding:

> "As Southwestern is not precluded from otherwise bringing actions or asserting defenses relative to its policies, its purpose in this litigation does not strike this Court as necessary."[12]

The April 2001 Order contained another holding as well which is relevant to the case at bar. The Receivership Court expressly held:

> "[T]he Receiver shall be permitted to accept death benefits on any mature policy, providing he has not received a *prior* notice of recission [*sic*] or cancellation from any insurance company and that said policy has not been the subject of a *prior* order of any court of competent jurisdiction declaring such policy to be void due to fraud on the insurer."[13]

---

[11] *Id.,* pp. 1-2 (bold emphasis added).

[12] Order dated April 19, 2004, p. 5, attached hereto as exhibit G.

[13] Exhibit F, p. 3 (emphasis added).

The effect of this holding is to prohibit any insurer from refusing to pay death benefits on any policy within the Receivership estate, the invalidity of which was not established during the lifetime of the viator. This prohibition obviously precludes any claim for a return of death benefits previously paid on a non-rescinded mature policy, but which the insurer subsequently determines could have been rescinded during the insured's lifetime.

On or about January 13, 2005, the Plaintiffs filed the case at bar in the Superior Court for the State of Delaware in and for New Castle County. Instead of merely suing the Receiver as the current owner of the policies at issue and as contemplated by the U.S. District Court in Ohio, the Plaintiffs also named the defunct corporations of Alpha and Liberte as defendants. The sole purpose for suing Alpha appears to have been to establish jurisdiction in Delaware, as Alpha was incorporated in that state.[14] Neither Alpha nor Liberte maintains any interest in the policies at issue, which are now assets of the Receivership estate. As set forth in the Defendant's Motion to Transfer Venue, there does not appear to be any basis for personal jurisdiction over Liberte or William Wuliger individually in the Delaware state court.

The litigation exception to the Ohio federal court's ban on satellite litigation against the Receiver provided only for limited actions to determine insurers' obligations to the **current** and **future** owners of the property (**"the Receiver or any transferee of the Receiver"**) – not the **past** owners (Alpha and Liberte). Moreover, there is no permissible claim against Alpha or Liberte resulting from their conduct as opposed to their property interest in the policies at issue. While the Complaint suggests that Alpha and Liberte contributed to the insurers' purported losses by alleging that they "may have assisted with certain of this illegal activity" (*i.e.,* the

---

[14] This conclusion is not mere speculation, but rather a reasonable inference when considering the known risk to the insurers of filing suit against Alpha despite a specific injunction barring the same. In fact, as a result of the violation, the Receiver filed a motion to adjudicate contempt against the Plaintiffs which is currently pending in the Receivership Court.

fraudulent obtainment of life insurance policies), the Receivership Court's litigation exception does not authorize the commencement of any civil action, against the defunct corporations or otherwise, to recover damages for any such conduct.

III.    LAW AND ARGUMENT

A motion to dismiss on jurisdictional grounds pursuant to Rule 12(b)(1) or (2) should be granted when, accepting the allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, the plaintiff has not alleged sufficient facts to invoke the jurisdiction of the court.  Miller Yacht Sales v. Smith, 384 F.3d 93, 95, note 1 (3rd Cir. 2004)(citations omitted)(Rule 12(b)(2)); Turicentro S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 (3rd Cir. 2002)(citations omitted)(Rule 12(b)(1)).  A motion to dismiss pursuant to Rule 12(b)(6) should be granted when, accepting the allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, the plaintiff is not entitled to relief.  In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1420 (3rd Cir. 1997)(citing Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3rd Cir. 1986))(rule 12(b)(6).  Additionally, Rule 9(b) requires that complaints alleging fraud be pled with specificity, and a complaints that fail to meet this requirement are also subject to dismissal.  Lum v. Bank of America, 361 F.3d 217 (3rd Cir. 2004).

Motions to dismiss on jurisdictional grounds may be facial (based on the pleadings alone) or factual (supported by evidence), whereas review of motions based on Rule 12(b)(6) is confined to a review of the complaint, along with any exhibits, matters of public record, or documents that form the basis of a claim.  Turicentro, 303 F.3d at 300, note 4 (citiations omitted); 114 F.3d at 1426.

8

A.     Rule 12(b)(1) – Court Lacks Subject Matter Jurisdiction

This Court lacks subject matter jurisdiction to hear the Complaint, which is vested exclusively with the U.S. District Court for the Northern District of Ohio as the Receivership Court over the property at issue.  The policies at issue in the case at bar were adjudicated as assets of the Receivership estate on November 9, 1999 by the U.S. District Court for the Northern District of Ohio.  Accordingly, they are *in custodia legis* of the U.S. District Court for the Northern District of Ohio and no other court is entitled to pass on the rights and obligations thereunder without the express consent of the court with exclusive jurisdiction over the *res*. Barton v. Barbour, 104 U.S. 126 (1881); Peale v. Phipps, 55 U.S. 368 (1852)(invalidating judgment against assets of property in receivership).  Rights to property that is *in custodia legis* can only be resolved by [or with the express consent of] the court having custody and control of the property. *See e.g.*, Modart, Inc. v. Penrose Industries Corp., 404 F.2d 72, 73-74 (1968).

Moreover, where, as here, two cases are *in rem* or *quasi in rem*, the court first asserting jurisdiction over the property in question maintains exclusive jurisdiction.   Mandeville v. Canterbury, 318 U.S. 47 (1943); Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456 (1939).

> "Where the proceeding is *in rem* and involves a "thing" or *res*, '[i]t is settled that, when a state court and a court of the United States may each take jurisdiction of a matter, the tribunal whose jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed, and the jurisdiction involved is exhausted.'"

Jennings v. Boeing & Co., 482 F.2d 1128, 1132 (3rd Cir. 1973)(*citing* Kline v. Burke Construction Co., 260 U.S. 226, 231 (1922)(*quoting* Baltimore & Ohio R.R. v. Wabash R.R., 119 F. 679, 679 (7th Cir. 1902)).  *See also,* Reichmen v. Pittsburgh National Bank, 465 F.2d 16,

18 (3rd Cir. 1972)(*citing* <u>Princess Lida of Thurn and Taxis</u>, 305 U.S. 456). This long-standing

rule is not just based on principles of comity, but on necessity.

> "If the two suits are *in rem* or *quasi in rem*, so that the court must have possession
> or control of the *res* in order to proceed with the cause and to grant the relief
> sought, the jurisdiction of one court must *of necessity* yield to that of the other."

<u>United States v. Bank of New York & Co.</u>, 296 U.S. 463, 477 (1936)(*citing* <u>Penn General</u>

<u>Casualty Co. v. Pennsylvania</u>, 294 U.S. 189. 195)(emphasis added). Furthermore:

> "[T]he principle ... that the court first assuming jurisdiction over property may
> maintain and exercise that jurisdiction to the exclusion of the other, is not
> restricted to cases where property has actually been seized under judicial process,
> but applies as well where suits are brought to marshal assets, administer trusts, or
> liquidate estates, and in suits of a similar nature where, to give effect to its
> jurisdiction, the court must control the property."

*Id.* At 280, *citing* <u>Farmers= Loan & Trust Co. v. Lake Street E.R. Co</u>, 177 U.S. 51, 61; <u>Palmer v.</u>

<u>Texas</u>, 212 U.S. 118. 129; <u>United States v. Bank of New York & Co.</u>, 296 U.S. 463, 477.

The Receivership Court has enjoined all interested persons from asserting any claim

against the entities in Receivership (including defendant Alpha), the Receiver himself, and any

property within his control by virtue of the Receivership, including all life insurance policies

funded by Alpha and Liberte investors. The wide breadth of the injunction is spelled out in the

original appointment Order of the General Receiver (Exhibit A) and a supplemental Order

granting <u>Alpha's Motion to Protect Its Investors from Satellite Litigation</u> (Exhibit F), the latter of

which was served on Plaintiff Southwestern via electronic filing. While the Receivership Court

created a narrow exception to the general injunction barring satellite litigation, that exception is

limited in several significant respects.

First, the exception is limited to actions between individuals and/or entities with a *current*

interest in a particular policy within the Receivership estate. The Receivership Court has defined

those individuals or entities as "any investor, the Receiver, any purchaser of policies from the

Receiver, or any insurer;"[15] thus, no action may be filed against any previous holder of an interest in a policy owned by the Receiver, including Alpha and Liberte. Second. the exception is limited to actions involving a determination as to the *insurer's* financial obligations under a particular policy within the Receivership estate. Permissible issues to be litigated under the exception order are limited to a determination of the validity of a policy (if valid the insurer must pay death benefits), and, if a policy is determined to be invalid, whether the insurer must refund past premiums paid – not claims alleging that the Receiver (or Alpha or Liberte) owes any financial obligation to an insurer. Finally, the exception is limited to declaratory actions relating to non-matured policies only. The Receivership Court specifically held that the Receiver is entitled to collect death benefits on any mature policy that wasn't either rescinded by the insurer or canceled by court order *prior to the insured's death*; accordingly, insurers are not entitled to seek a refund of death benefits already paid on policies that were permitted to reach maturity without revocation.

In summary, the litigation exception permits suits *against **the Receiver or his transferee** only, for **declaratory relief** regarding insurers' financial obligations as to **non-matured** insurance policies* in the Receivership estates. In express violation of the order, the instant suit *names the **defunct corporations** as Defendants and seeks **monetary damages** against the cash assets in receivership (or to be collected by the Receiver) derived from death benefits on **matured** policies* (Counts III, IV and VII). Moreover, even those counts seeking primarily declaratory relief (Counts I and II and V and VI) are beyond the scope of the litigation exception authorized by the Receivership Court. In Counts I and II, the Plaintiffs request a blanket

---

[15] Exhibit F. At the time the Receivership Court issued the exception Order, the method of distribution to investors had not yet been determined. Several investors were advocating for a tracing method, under which they would be entitled to recover any proceeds from the particular policies to which they had been "matched" by Liberte or Alpha. The Receivership Court subsequently rejected this proposal and adopted a *pro rata* method of distribution, thereby eliminating any individual interest of any investor in any particular policy within the Receivership estate.

declaration that the Defendants not be permitted to rely on "any incontestable clause in *any* of the [Alpha or Liberte] Policies at Issue," rather than just those adjudicated as fraudulent. (Emphasis added.) Counts V and VI, which seek a declaration that "the Insurers shall have no further obligations under the [Alpha and Liberte] Policies," fail for the same reason. Rather than limit their request for relief to only those policies that are actually determined to be fraudulent, the Plaintiffs request relief as to *all* policies named in the Complaint including, but presumably not limited to, those that are deemed fraudulent.

The Plaintiffs were aware of the limitations created by the Receivership Court, yet they elected to file an action asserting claims that clearly exceeded those limitations without first seeking any expanded authorization from the Receivership Court. The decision appears to have been a strategical gamble. Rather than seek permission and risk an express denial, the Plaintiffs chose to file their complaint, absent permission, in a distant forum where it would be difficult for the Receiver to defend, with the hope that the distance would obfuscate the extent of their violative conduct from the Receivership Court. Such an intentional circumvention of the Receivership Court's injunction should not be rewarded. The Plaintiffs are overreaching, and the Complaint must be dismissed for lack of subject matter jurisdiction.

B.    Rule 12(b)(2) – Court Lacks Personal Jurisdiction

The Receivership Court's April 2001 exception order requires that any suits adjudicating the insurer's obligations under policies within the Receivership estates be filed in "courts of competent jurisdiction." This condition elevates the lack of personal jurisdiction over the Receiver to a subject matter jurisdictional defect. Notwithstanding this fact, that this Court lacks personal jurisdiction is itself grounds for dismissal pursuant to Rule 12(b)(2). "Once a defendant challenges the plaintiff's allegation of personal jurisdiction, … the burden is on the plaintiff to

offer affirmative proof of the allegation." Werner v. Miller Technology Management. L.P., 831 A.2d 318, 329 (Del. 2003)(*citation omitted*).

The grounds cited by the Plaintiffs for personal jurisdiction over the Defendants in this action can be summarized thusly: Defendant Liberte (an Ohio corporation) "participated in the unlawful viatication of life insurance policies, certain of which life insurance policies, upon information and belief, were issued on the lives of Delaware residents;" Defendant Alpha was incorporated in the state of Delaware; and Defendant William Wuliger (an Ohio resident) is the court-appointed Receiver over Alpha. For the following reasons, these grounds cannot stand to confer personal jurisdiction in Delaware.

To establish personal jurisdiction, a defendant's contacts with the Delaware must satisfy both Delaware's long-arm statute, 10 Del. C. §3104, and Due Process requirements. Moore v. Little Giant Industries. Inc., 513 F.Supp. 1043, 1046 (D.C. Del. 1981)(*citing* Beaty v. M.S. Steel Co., 401 F.2d 157, 159 (4th Cir. 1968); Werner v. Miller Technology Management. L.P., 831 A.2d 318, 327 (Del. 2003)(*citations omitted*). 10 Del. C. §3104(c) authorizes the exercise of personal jurisdiction over a non-Delaware resident defendant who:

(1) Transacts any business or performs any character of work or service in [the state of Delaware];

(2) Contracts to supply services or things in [the state of Delaware];

(3) Causes tortious injury in [Delaware] by an act or omission in [the state of Delaware];

(4) Causes tortious injury in [Delaware] or outside of [Delaware] by an act or omission outside [Delaware] if the person regularly does or solicits business in [Delaware] or derives substantial revenue from services, or things used or consumed in [the state of Delaware];

(5) Has an interest in, uses or possesses real property in [the state of Delaware]; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within [Delaware] at the time the contract is made, unless the parties otherwise provide in writing.

Despite this seemingly broad grant of authority, merely transacting business with a Delaware resident is not sufficient to satisfy Delaware's long-arm statute. Greenly v. Davis, 486 A.2d 669 (Del. 1984)(finding no jurisdiction in Delaware over Pennsylvania residents in breach of contract action, despite the fact that purported contract involved the sale of stock in a Delaware corporation to Delaware residents and the closing was supposed to have taken place in Delaware).

Additionally, even where a single transaction is sufficient to authorize jurisdiction under Delaware's long-arm statute, if the defendant lacks sufficient minimum contacts with the state to satisfy due process concerns, no jurisdiction may be had. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)(*citation omitted*); Pennoyer v. Neff, 95 U.S. 714 (1878); Werner, 831 A.2d at 330 (*citing* International Shoe; Shaffer v. Heitner, 433 U.S. 186, 212 (1977); Sternberg v. O'Neil, 550 A.2d 1105, 1116 (Del. 1988). Even if a defendant's contact with the forum state is insufficient to confer *general* jurisdiction in accordance with Due Process, if the controversy "arises out of" that contact, *specific* jurisdiction exists. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, notes 8 & 9 (1984)(*citations omitted*); Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3rd Cir. 2004)(*quoting* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

### Liberte and Alpha

There is no basis for personal jurisdiction, either general or specific, over Defendant Liberte in the state of Delaware. Liberte has not transacted any business in Delaware as defined by Delaware's long-arm statute, and Liberte lacks the requisite minimum contacts with the state

14

of Delaware necessary to satisfy Due Process requirements in any event. It is undisputed that Liberte was incorporated and maintained its principal place of business in Ohio. Additionally, Liberte had no office in Delaware.[16]

A thorough review of Liberte's records reveals that, contrary to the Plaintiffs' assertion, *no* viaticated life insurance policies acquired by Liberte Capital Group that were later determined to be fraudulent were issued on the lives of Delaware residents.[17] In fact, out of approximately 1,000 life insurance policies purchased by Liberte, only one was issued on the life of a Delaware resident. Furthermore, the policy that insured the Delaware resident was sold to Liberte via a viatical broker located in the state of Florida.[18] Additionally, only two Liberte investors were Delaware residents (a married couple; the husband is now deceased), and they purchased their investment through a Liberte agent located in the state of Florida, using a contract which they executed in Florida.[19] The contracts utilized by Liberte were standard contracts created by Liberte in the state of Ohio.[20] The mere fact that a party on the other end of a Liberte contract was a resident of Delaware is inconsequential to this Court's analysis. Greenly v. Davis, 486 A.2d 669 (Del. 1984).

Moreover, since the limited contacts that Liberte had with Delaware did not give rise to any cause of action by these Plaintiffs, there is no basis for specific jurisdiction over Liberte, either.

> "Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'"

---

[16] Affidavit of Virginia Hale, attached hereto as Exhibit H.

[17] *Id.*

[18] *Id.* While the undersigned previously advised the Court in his Motion to Transfer Venue that there were two such policies, a closer review revealed that Liberte never finalized the purchase of the second policy.

[19] *Id.* The undersigned previously represented that there was only one such investor, but after locating the investment contract, he discovered that the single investment was made in the names of both husband and wife.

[20] *Id.* The contracts contain a forum selection clause naming Georgia as the forum state.

Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3rd Cir. 2004)(*quoting* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). Liberte's single policy issued to a Delaware viator was *not* issued by any of the insurers that are plaintiffs in the case at bar (and thus, is not at issue in this suit).[21] Additionally, the two Liberte investors residing in Delaware were not matched to any policy at issue in the case at bar, and were not matched to a policy that was designated as fraudulent.[22] These facts are simply insufficient to establish personal jurisdiction over Defendant Liberte in Delaware.

There are jurisdictional defects with respect to Defendant Alpha, as well. Alpha never maintained an office in Delaware and never transacted any business with investors or viators residing in the state.[23] It is true, however, that Alpha was incorporated in Delaware, and the Receiver concedes that incorporation in a state ordinarily provides a valid basis for personal jurisdiction in the courts of that state. However, the Receivership Court has expressly barred the commencement of any suit against Alpha Capital Group.[24] The Plaintiffs can point to no order lifting that ban or otherwise authorizing them to file suit against Alpha.

Finally, it must be noted that neither Liberte nor Alpha has any remaining interest in any of the policies at issue in this suit, which have all been adjudicated as assets of the Receivership estate. It is undisputed that the Receivership Court has determined the assets in the Receiver's control are held on behalf of the individual investors. Accordingly, title to the policies at issue is vested in the Receiver – not Alpha or Liberte. U.S. v. Beaver, 252 F.2d 486, 488 (3rd Cir. 1958); *In re* Fidelity Tube Co., 278 F.2d 776 (3rd Cir. 1960) (Kalodner and Hastie, JJ., *dissenting*), *reversed by* U.S. v. Speers, 382 U.S. 266 (1965). Since there are insufficient funds to fully

---

[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] Exhibit E.

reimburse the investors for their losses, Alpha and Liberte do not even have a residual interest therein. Beaver, 252 F.2d at 488 (*citing* Porter v. Sabin, 149 U.S. 473 (1893)). *See also, In re* Consolidated Containers Carriers, Inc., 385 F. 2d 362 (3rd Cir. 1967)(assets attached by foreign writ months before bankruptcy petition filed were *in custodia legis* and no longer property of the debtor subject to disposition via the bankruptcy court); Cheff v. Athlone Industries, Inc., 233 A.2d 170, 173 (Del. 1967)(holding that residuary legatee's interest in residuary estate pending administration was speculative at best and no sequestration could be had prior to final settlement of estate). As noted herein *supra*, the Receivership Court has only authorized suits relating to the policies in receivership against the *current* owner of those policies. Accordingly, since neither Alpha nor Liberte is an interested party to this suit, neither is a proper defendant (*see* Section III(C), *infra*).

The Receiver

It is not contended that the Receiver has had any contact with Delaware, and indeed, he has had none. The Receiver is a resident of the state of Ohio, maintains an office in the state of Ohio, and has never even traveled to Delaware.[25] Rather, the Plaintiffs urge that personal jurisdiction over the Receiver may be had in Delaware based entirely on the fact of Alpha's incorporation in that state. Since the Receivership Court has expressly enjoined all persons from commencing suit against Alpha Capital Group, and since that portion of the injunction has never been lifted (even conditionally), the Receiver's relationship with Alpha Capital Group is not relevant to the question of jurisdiction over the Receiver in Delaware. Under these circumstances, this Court lacks personal jurisdiction over the Receiver.

---

[25] Affidavit of William Wuliger, attached hereto as Exhibit I.

C.    Rules 12(b)(6) and 9(b) – Complaint Fails to State A Claim for Relief and
      Complaint Lacks Sufficient Specificity of Fraudulent Conduct

Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

Accordingly, it must be dismissed pursuant to Rule 12(b)(6).    Additionally, because the

Plaintiffs' claims are all premised on allegations of fraud but fail to specify any fraudulent

conduct, it must be dismissed pursuant to Rule 9(b), as well.   The seven-count Complaint can be

divided into four general categories:

- Counts I & II seek a general declaration that the Receiver not be permitted to rely on the
  incontestability clause contained in any Liberte or Alpha policy issued by the Plaintiffs,
  presumably justified by the allegation that many policies were procured via **fraud**;

- Counts III & IV seek monetary damages to compensate the Plaintiffs for any death
  benefits already paid on Liberte or Alpha policies that were procured via **fraud**;

- Counts V & VI seek a general declaration that the Plaintiffs have no further obligations
  under any of the Liberte or Alpha policies at issue, including no obligation to refund
  premiums for any policy procured via **fraud**;

- Count VII seeks a set-off of past damages resulting from **fraudulent** policies against any
  future death benefits owing to the Receiver from any non-fraudulent Liberte or Alpha
  policy.

Accordingly, every claim for relief is premised on the conclusion that the policies at issue were

procured by fraud.   Yet, the Plaintiffs have alleged *no* facts upon which this Court could possibly

determined that any of the specific policies at issue were obtained via fraud – let alone fraud by

Defendants Alpha or Liberte.

The Complaint alleges that "Liberte participated in the unlawful viatication of life

insurance policies."[26]  Without referring specifically to Alpha or Liberte, it goes on to describe

certain "well-documented practices" wherein terminally ill viators make fraudulent

---

[26] Complaint, paragraph 9.

misrepresentations to insurers in order to secure policies for the sole purpose of re-selling them to companies like Alpha and Liberte.[27] The Plaintiffs then assert their "belief and contention" that "many of the [Liberte and Alpha] policies were obtained through fraud and/or with an intent to viaticate," and opine that Liberte and Alpha "*may* have had assisted with … this illegal activity."[28] The Complaint then points to conclusions drawn by the Government and the Alpha Receiver to support its contention that many Liberte and Alpha-owned policies were procured through fraud.[29] But, with the exception of paragraph 39, the Complaint fails to allege that even a single particular policy was fraudulently obtained. In fact, the Plaintiffs say only that "upon information and belief, the … Policies at Issue *may* have been procured by fraud and/or … with an intent to viaticate."[30] Moreover, the single policy referenced in paragraph 39 as having been declared fraudulent by the Court of Common Pleas for Summit County, Ohio is not one of the policies named by the Plaintiffs as a policy at issue in this case,[31] and even more significantly, the decision referenced in paragraph 39 was recently declared void *ab initio* by the same Court.[32]

The allegations as drafted by the Plaintiffs are simply insufficient grounds for the relief they have requested. In short, assuming all facts asserted as true and drawing all reasonable inferences in favor of the Plaintiffs, the Plaintiffs are not entitled to the relief they request. Lum v. Bank of America, 361 F.3d 217, 223 (3rd Cir. 2004)(*citing* Moore v. Tartler, 986 F.2d 682, 685 (3rd Cir. 1993)); Weinberger v. UOP, Inc., 409 A.2d 1262, 1263-64 (Del. 1979)(*citations omitted*). As an initial matter and regardless of the lack of specificity in the Plaintiffs'

---

[27] *Id.,* paragraphs 16-23.

[28] *Id.,* paragraphs 33 and 36 (emphasis added).

[29] *Id.,* paragraphs 34, 37 and 38. Specifically, the Plaintiffs cite to the Department of Justice's conclusion that 556 of the 994 Liberte policies (approximately 56%) were obtained by fraud, and the undersigned's nonspecific statement that "the bulk" of viaticals purchased by Alpha were similarly fraudulent.

[30] *Id.,* paragraphs 35 and 40 (emphasis added).

[31] Exhibit H.

[32] Exhibit I, Attachment 1 (Order Denying Summary Judgment, Southwestern Life Insurance Co. v. William T. Wuliger, Case No. CV 04 04 2060, Court of Common Pleas for Summit County).

Complaint, there is absolutely no basis for any relief, at law or in equity, that is not premised on

a specific finding of fraud as to any particular policy identified by the Plaintiffs as "at issue" in

the case at bar. Thus, Counts I, II, V and VI fail because the relief requested is not based on the

wrongful conduct alleged. The undersigned knows of no authority for the proposition that,

because some policies acquired by Alpha and Liberte may have been fraudulent, all policies

acquired by Alpha and Liberte should be declared as fraudulent. Indeed, even if, as the

Department of Justice alleged, 56% of Liberte's policies were fraudulently obtained, it stands to

reason that 44% of Liberte's policies (approximately 437) were not, and Plaintiffs have not

alleged sufficient facts to conclude that the 31 Liberte policies at issue named by the Plaintiffs

are not among the valid and enforceable policies. The same can be said of the Alpha policies.

In addition, even those claims for relief that are limited to policies that have actually been

fraudulently obtained (*i.e.*, Counts III, IV and VII), must fail because they lack the specificity

required by Rule 9(b). Because the Plaintiffs' claims are predicated on fraud, they are required

to state the grounds for relief with particularity pursuant to Rule 9(b). Lum, 361 F.3d 217

(requiring heightened particularity for RICO and anti-trust claims premised on fraud). General

allegations of fraud are insufficient to survive a Rule 9(b) challenge. *Id.*, 361 F.3d 223.

> "In order to satisfy Rule 9(b), plaintiffs must plead with particularity 'the
> circumstances of the alleged fraud in order to place the defendants on notice of
> the precise misconduct with which they are charged, and to safeguard defendants
> against spurious charges of immoral and fraudulent behavior.' Seville Indus.
> Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3rd Cir. 1984).
> Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the
> fraud, or through 'alternative means of injecting precision and some measure of
> substantiation into their allegations of fraud.' *Id.* (holding that a plaintiff satisfied
> Rule 9(b) by pleading which machines were the subject of alleged fraudulent
> transactions and the nature and subject of the alleged misrepresentations).
> Plaintiffs also must allege who made a misrepresentation to whom and the general
> content of the misrepresentation. *See* Saporito v. Combustion Eng'g. Inc., 843
> F.2d 666, 675 (3rd Cir. 1988), *vacated on other grounds,* 489 U.S. 1049 (1989);
> Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658-59 (3rd Cir.

1998); Klein v. General Nutrition Co., Inc., 186 F.3d 338, 345 (3rd Cir. 1999).

Lum at 223-24 (*internal quotation marks omitted*). A complaint based on fraud must "contain explicit rather than implied expression of the circumstances constituting fraud." King Automotive, Inc. v. Speedy Muffler King, Inc., 667 F.2d 1008, 1010 (U.S. Court of Customs and Patent Appeals 1981)(*citations omitted*). As noted by the Delaware Supreme Court:

> "The 'circumstances' which must be stated with particularity under Rule 9(b) refer to 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"

Nutt v. A.C. &S., Inc., 466 A.2d 18, 23 (Del. 1983)(*citations omitted*). The Plaintiffs in the case at bar have done little more than allege that fraud is generally rampant in the viatical industry. They have set forth *no* circumstances regarding any incidents of fraud. They have not even identified which policies are purportedly fraudulent -- let alone identified the specific misrepresentations upon which they relied. Clearly, the Plaintiffs have not satisfied the particularity requirements of Rule 9(b).

Finally, and perhaps most significantly, the Plaintiffs' claims are time-barred in any event. 10 Del. C. § 8106 provides for a three-year statute of limitations for claims based on fraud such as those in the case at bar. *See* Solow v. Aspect Resources, LLC, 2004 WL 2694916, p. 3 (Del. Ch.). It makes no difference whether the claims sound at law or in equity. Smith v. Goldstein, 447 F. Supp. 1244, 1246 (D. Del. 1978)(*citing* Read v. Local Lodge 1284, 528 F.2d 823, 825 (3rd Cir. 1972); Patterson v. Vincent, 61 A.2d 416 (1948))(Delaware limitations scheme is based on type of injury suffered not on type of action instituted); Vredenburgh v. Jones, 349 A.2d 22 (Del. Ch. 1975)(though statute of limitations technically applies to cases at law, courts of equity generally give deference to it in analogous cases in determining whether claims are

barred by *laches*);[33] Artesian Water Co. v. Lynch, 283 A.2d 690, 692 (Del. Ch. 1971)(*citations omitted*); Wise v. Delaware Steeplechase & Race Assn., 45 A.2d 547, 552 (Del. 1945). The fact that the Plaintiffs seek monetary damages assures this result. Artesian Water, 283 A.2d at 692.

As the Plaintiffs themselves aver, they were aware of potential fraud as early as February 2001 when Plaintiff Southwestern and the government objected to the Receiver's sale of certain Liberte policies. Complaint, paragraph 29. At the very latest, the Plaintiffs cause of action accrued when the Receivership Court issued its Order on April 13, 2001 permitting it to challenge the validity of policies designated as fraudulent. Accordingly, the very latest date at which Plaintiffs could have filed their action was April 12, 2004; they failed to do so until more than nine months later. Accordingly, their claims must be dismissed.

IV.    CONCLUSION

Read in conjunction, the injunction and exception orders of the Receivership Court specifically enjoin all interested persons from bringing, without exception:

(1) any claim against Alpha Capital Group (as well as VES and CFL);

(2) any claim for monetary relief to be paid from the Receivership estates; and

(3) any claim related to matured policies that were not rescinded or cancelled during the lifetime of the insured;

Accordingly, the only permissible suit the Plaintiffs could have filed relating to policies within the Receivership estate without first obtaining consent of the Receivership Court is a suit against the *current* owner of a policy to determine the extent of the *insurer's liability* under that policy. Since the Plaintiffs' Complaint clearly violates the restrictions established by the Receivership Court, it must be dismissed for lack of subject matter jurisdiction. Furthermore, since *all* claims

---

[33] In fact, since the Plaintiffs continued to accept premium payments from the Receiver on many of the policies at issue herein after they had notice of potential fraud in the procurement, he has been harmed by their delay and their claims are properly barred by *laches* – the equitable equivalent of the statute of limitations.

against Alpha are barred outright, and since there is no basis for exercising personal jurisdiction over Defendant Liberte or the Alpha Receiver, the Complaint must also be dismissed for lack of personal jurisdiction, pursuant to Rule 12(b)(1) and (2) of the Federal Rules of Civil Procedure.

Finally, even assuming *arguendo* that jurisdiction in Delaware is appropriate, the Plaintiffs' Complaint fails to state a claim for relief and alleges fraud without sufficient particularity. Moreover, in addition to the other fatal defects discussed herein, the Plaintiffs' Complaint is outside of the three-year statute of limitations. Accordingly, it is time-barred as well. Therefore the Complaint must be dismissed pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/William T. Wuliger
WILLIAM T. WULIGER, ESQ. (0022271)
*Pro Se*
U.S. District Court Receiver
1340 Sumner Court
Cleveland, Ohio 44115
216/ 781-7777

CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2005, a copy of the foregoing Motion to Dismiss was

sent by regular U.S. mail, postage prepaid, to:

Warren T. Pratt, Esq.
David P. Primack, Esq.
Drinker, Biddle & Reath LLP
1100 N. Market Street, Ste. 1000
Wilmington, DE 19801-1254
Attorneys for Plaintiffs


Stephen C. Baker, Esq.
Michael Miller, Esq.
Timothy O'Driscoll, Esq.
Drinker, Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103
Of Counsel

WILLIAM T. WULIGER, ESQ. (0022271)
*Pro Se*
U.S. District Court Receiver

WTW:MotiontoDismiss(1)
WTW:1141

24