

FILED

99 JUL 15 PM 1: 25

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| LIBERTE CAPITAL GROUP, LLC, | ) | Case No. 5:99 CV 818 |
| | ) | |
| Plaintiff, | ) | Judge David D. Dowd, Jr. |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMES A. CAPWILL, et al., | ) | JUDGMENT ENTRY |
| | ) | APPOINTING RECEIVER |
| Defendants. | ) | |

This Judgement Entry is in furtherance of, and consistent with, the Court's July 2, 1999,

Memorandum opinion and Order granting Intervenors' Motion For The Emergency

Appointment Of A Receiver, the request for appointment of a Receiver contained therein, to take

charge of the property of Defendants Viatical Escrow Services, LLC ("VES") and Capital Fund

Leasing ("CFL"). The Court, being duly advised in the premises, finds as follows: that it is

beneficial for a Receiver to be forthwith appointed as requested by Intervenors to take charge of

the assets belonging to VES and CFL, to manage those assets and to see to the proper

administration and, where appropriate, eventual sale of said assets and distribution to creditors in

order of the legal priorities and that, in the interim, litigation among the parties to this action be

stayed except upon conditions that may be set by the Court.



**EXHIBIT**

A

132

(5:99 CV 818)

The objective of the receivership is to preserve and increase the estate for the benefit of all the creditors, investors, owners and parties to this case. The Receiver should not attempt an immediate liquidation of assets if it would be more prudent to maintain an asset in its current state.

It is, therefore, ORDERED, ADJUDGED and DECREED that Frederick M. Luper, who is not a party, attorney or interested person in this matter, be and hereby is appointed Receiver to oversee and to administer the business and assets of VES and CFL:

(a)     to take and maintain exclusive and complete custody, control and possession of all the assets belonging to VES and CFL at a place suitable to the Receiver (including, if space permits, the Cleveland, Ohio office of Porter, Wright, Morris and Arthur), and to make any court or other filings appropriate to exercise such custody, control and possession;

(b)     if advisable, to obtain an appraisal of some or all of the assets of VES and CFL;

(c)     to sell the assets of VES and CFL, including real property, on terms, provisions and conditions as shall be prescribed pursuant to further order of the Court;

(d)     to satisfy the claims of creditors, including investors and other parties, in the order of legal priority;

(e)     to perform an accounting of VES and CFL property, including the making of recommendations to the Court regarding findings of fact and

2

(5:99 CV 818)

conclusions of law on all claims among the parties with respect to VES and CFL;

(f)    to employ such employees, agents and accountants as the Receiver deems advisable in the conduct of this Receivership, including partners and associates of Receiver's law firm;

(g)    to incur such expenses and make such disbursements as may be necessary for the care, maintenance and preservation of the Receivership property, including the power to make payment for utilities, insurance and other routine expenses for the period commencing with the appointment of the Receiver;

(h)    upon application and approval by the Court, to institute, prosecute, defend, intervene in, become party to, compromise or settle all such cases and proceedings as are in the Receiver's opinion necessary or proper to preserve or protect the Receivership property or to carry out the terms of this Order, whether such cases and proceedings are now pending or hereafter brought by or against the Receiver in his capacity as Receiver of VES and/or CFL, against VES, or against CFL in state or federal courts or administrative agencies or other forums;

(i)    to collect any and all rents, income, profits or other income arising from the operation and any sale of the assets or property held by, owned by, in the possession or control of VES and CFL and invest those monies only in direct federal government obligations or federally insured bank accounts;

(5:99 CV 818)

      (j)    to set up necessary bank accounts for repayment of the investments of the foregoing parties;

      (k)    to track funds that were invested and escrowed with VES and then channeled into CFL and determine the appropriate course of action for those funds;

      (n)    to make necessary deposits into premium escrow accounts, subject to the availability of funds;

      (o)    to assist in any efforts to settle the case if so requested by the parties;

      (p)    to pay such of VES's employees that the Receiver hires to assist him in the aforementioned duties;

      (q)    to pay premiums on insurance policies as they become due, to the extent funds are available;

      (r)    to check that any escrow agents replacing VES have proper contracts and are properly bonded and insured to protect the investors;  and

      (s)    to otherwise manage, maintain and protect the assets of VES and CFL.

It is further ORDERED, ADJUDGED and DECREED that the Receiver post a bond issued by CNA in the sum of two million dollars ($2,000,000.00). The cost of obtaining a bond may be taxed as costs at the conclusion of this lawsuit, on condition that the Receiver has faithfully and truly performed the duties of his office, duly accounted for all monies and properties that have come into his hands, and abided by and performed all things that he has been directed to do.

(5:99 CV 818)

It is further ORDERED, ADJUDGED and DECREED that the Receiver shall be compensated at such rate as the Court shall approve, not to exceed $250 per hour, for his time expended in holding and liquidating the assets and recovering and collecting the proceeds thereof; that, in addition to such hourly compensation, the Receiver shall be reimbursed in full for any and all reasonable and necessary expenses incurred by him in the course of discharging his responsibilities hereunder.

It is further ORDERED, ADJUDGED and DECREED that the Receiver shall submit to this Court with copies to respective counsel for the parties hereto not later than the 14th day of each calendar month a written monthly report (the "Monthly Report") of time expended and reasonable and necessary expenses incurred by him in the performance of his responsibilities hereunder and an accounting of funds expended, funds paid to creditors and funds held by the Receiver; that, unless a specific written objection is filed with this Court by any party hereto within twenty (20) days following the Receiver's submission of any such Monthly Report, the Receiver shall be permitted to withdraw from the Receiver's Account, which the Receiver shall cause to be funded from the income referred to in subparagraph (i) above, the proper amount to compensate him for time expended and reimburse him for reasonable and necessary expenses incurred, as set forth above.

It is further ORDERED that all creditors, claimants, bodies politic, parties in interest, and all sheriffs, marshals, and other officers, and their respective attorneys, servants, agents, and employees, and all other persons, firms and corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against said VES and/or CFL, or

(5:99 CV 818)

their property, or against the Receiver in any court. Said entities are further stayed from executing or issuing or causing the execution or issuance out of any Court of any writ, process, summons, attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon, any property owned by or in the possession of the said Receiver, and from doing any act or thing whatsoever to interfere with the Receiver in the discharge of his duties in this proceeding with the exclusive jurisdiction of this Court over said properties and said Receiver.

It is further ORDERED that this Court's prior orders granting or continuing the temporary restraining order are hereby vacated and that James Capwill and his personal assets are hereby specifically released from any freeze, restraining order, garnishment or other court order.

It is further ORDERED that the Receiver notify all known creditors of VES and CFL of the receivership herein and said creditors are ordered to file sworn claims within sixty (60) days of the notice thereof or else be forever barred from asserting the same.

This Order shall be in full force and effect as of the date on which it is journalized with the Clerk of this Court.

IT IS SO ORDERED.

_____

Judge David D. Dowd, Jr.



Copies.
hand-delivered Op
11/9/99

Exhibits Under
Seal #2631



99 NOV -9 PM 12: 09

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| LIBERTE CAPITAL GROUP, LLC, | : |
| | : |
| Plaintiff, | : |
| | : Case No. 5:99 CV 818 |
| vs. | : |
| | : JUDGE DAVID D. DOWD, JR. |
| JAMES A. CAPWILL, et al., | : |
| | : |
| Defendants. | : |

### AGREED ORDER

This matter came on for consideration upon the Motion of Frederick M. Luper, Receiver for Viatical Escrow Services and Capital Fund Leasing, for Extension of the Receivership to include assets of James A. Capwill, Capwill & Co., Capwill Construction, and CWN Group (hereafter collectively, "Capwill"). Capwill and the Receiver have agreed to the following findings of fact and Agreed Order:

1.    A number of insurance policies procured by Alpha or Liberte and funded with Alpha or Liberte investors have James A. Capwill or Capwill & Co. as Trustee or nominee owner or beneficiary of the viatical irrevocable trusts.

2.    Several brokerage accounts containing funds of Viatical Escrow Services and/or Capital Fund Leasing have been opened in the name of Mr. Capwill, individually, or Capwill &

1

**EXHIBIT**

**B**

Co.. Recently the Court entered an Order authorizing the Receiver to have access to two accounts the Receiver has been able to identify in Everen Securities and First Montauk. The Receiver has identified other brokerages which have or had Capital Fund Leasing accounts. Those brokerages had refused to provide the Receiver with any information concerning accounts in Mr. Capwill's name or the name of Capwill & Co. until the Receiver obtained an Order of this Court.

3.    James A. Capwill and Capwill & Co. have entered their appearance herein and consent to the relief granted in this Order.

4.    Attorney Ken Rose of New York represented Mr. Capwill in transactions involving Noah and Agean. A Noah Cap receivable is on the books of Capital Fund Leasing for $2.2 Million, and there is little in the records of VES or CFL to explain the transaction.

5.    The Receiver is investigating the propriety of rescission of many hundreds of insurance policies. First Columbian Mutual Life Insurance has declined to furnish information because "neither VES nor CFL appears [sic] to have privity of contract with regard to the policy . . ." Great Southern Life Insurance Co. has declined to provide the Receiver with information on 4 rescinded policies, stating, "I am not aware of any interest on the part of either of the entities in receivership in the listed insurance policies." All four of these policies have Capwill & Co. listed as the Trustee. Unless the Receiver is authorized to speak on behalf of Capwill & Co., he will be unable to obtain information to manage death benefit claims, rescissions, and liquidation of estate assets held in names other than VES and CFL.

6.    The Receiver has identified brokerage accounts in Everen Securities, First Montauk Securities, Bear Stearns, Charles Schwab, Morgan Stanley and Morgan Stanley Dean Witter as brokerage houses which may have accounts in the name of Capwill & Co., and/or James Capwill that may be estate property.

7.    The Receiver has identified bank accounts in Key Bank, First Star Bank fka Star Bank, and LaSalle National Bank, which may have accounts in the name of Capwill & Co., and/or James Capwill that may be estate property.

8.    James Capwill, Capwill & Co., and CWN Group, LLC are separate entities and are entitled to maintain and keep their respective bank accounts and brokerage accounts for their own use and benefit, subject only to future claims by creditors, which may include the Receiver and the other parties in this case.

IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED that:

1.    The scope of the Receivership is hereby extended to cover all interests in any and all insurance policies funded by investors which Liberte Capital, LLC or Alpha Capital, LLC contacted, which are or were in the name of James A. Capwill, Capwill & Co., CWN Group or any other name, either as nominee owner or as trustee (or any other capacity) (the "Subject Policies"), for the purpose of managing and administering insurance policies in which one of the foregoing either is named as owner, beneficiary or Trustee, including, but is not limited to death claims, rescission issues, premium payment issues and anything else reasonably necessary in the management of these insurance policies.  This excludes James Capwill's personal life insurance with Hartford Insurance Co., Policy No. 000 UFO834801.  The scope of the Receivership is further extended to cover any and all interests in any bank accounts or brokerage accounts which are or were in the name of James A. Capwill, Capwill & Co., CWN Group, or any other name into which estate funds went, except the accounts listed in A and B.

2.    The Receiver is authorized to direct each and every insurance company with a Subject Policy to change the ownership, beneficiary, and/or Trustee designation to "Frederick M. Luper, Receiver" and to change the address for sending mail regarding these policies to Receiver's office.

3.     Upon receipt of a copy of this Order, any insurance company is authorized and directed to furnish the Receiver with all information concerning the viators (insureds), including but not limited to each and every fact (whether medical or otherwise) upon which such company relied in making underwriting or rescission decisions regarding the Subject Policies.

4.     Any and all brokerages, including but not limited to Everen Securities, First Montauk, Bear Stearns, Charles Schwab, Morgan Stanley Dean Witter, and MAXUS, are authorized and directed to make available to the Receiver all information and documentation in their possession and control relating to James A. Capwill, Capwill & Co., CWN Group or any other name as nominee owner or trustee over any brokerage accounts. Such brokerages shall turn over any and all such information to the Receiver. Specifically excluded from this paragraph are the accounts listed on Exhibit A.

5.     Any and all banks, including but not limited to Key Bank, First Star Bank, fka Star Bank, and LaSalle National Bank are authorized and directed to make available to the Receiver all information and documentation in their possession and control relating to James A. Capwill, Capwill & Co., CWN Group, or any other name either as nominee owner or as trustee for any bank accounts. Such banks shall turn over to the Receiver any and all information on such accounts. Specifically excluded from this paragraph are any payroll or operations or other accounts listed on Exhibits A and B hereto.

6.     Attorney Ken Rose is authorized and directed to make available to the Receiver all information and documentation which he had in his possession and control on April 7, 1999, relating to James A. Capwill, Capwill & Co., CWN Group, or any other entity in which any of them has an interest relating to transactions involving Viatical Escrow Services, Capital Fund Leasing, James A. Capwill, or Capwill & Co., or any entity in which any of them has an interest, including but not limited to Noah Cap, Noah Financial, and Agean. James A. Capwill and

4

Capwill & Co. have waived the attorney-client privilege for the foregoing information. Any attorney-client relationship for activities between Mr. Rose as attorney and James A. Capwill and Capwill & Co. occurring after April 7, 1999 shall not be waived.

7.     The Receiver and the parties to this Order agree, and the Court orders, that this Receivership shall not be extended in the future to cover (a) any entities controlled or owned, in whole or in part, by James a. Capwill, which are debtors of Capital Fund Leasing, LLC or Viatical Escrow Services, LLC, including but not limited to Noah Cap., Four Fellows Pub, Inc., Hudsons Crossings Holdings, LLC, Rainbow Properties, LLC, or CapAurora Properties, Capwill Construction, Capwill Real Estate Holdings, Capwill Properties or (b) James Capwill personally or CWN Group or Capwill & Company or any of their (a) bank accounts or brokerage accounts listed on Exhibits A or B hereto or (b) other assets, which are not now part of the receivership or (c) Noah Financial or the Agean Group, except if there are any misrepresentations contained in any exhibits provided by James A. Capwill or Capwill & Co. in connection with this Order. Nothing in this Order shall prohibit or limit the Receiver's authority to file a separate plenary suit against Mr. Capwill or Capwill & Co. for damages, injunctive relief or prejudgment attachment as provided under the Order Appointing a Receiver dated July 15, 1999, and to conduct full discovery therein.

8.     Exhibits A and B shall be filed solely under seal and with the Court and shall not be revealed or shown to any party to this litigation or outside the litigation without Court Order issued only for good cause shown.

9.     This Order does not expand the Receivership to cover James A. Capwill, personally, or CWN Group or Capwill & Co, but only covers the property specified elsewhere in this Order. However, the Receiver shall have full access to all information of property specified

5

elsewhere in this Order, even if it is in the name of James A. Capwill, CWN Group, or Capwill & Co. except for the amounts listed on exhibits A & B

10.    The Receiver shall keep confidential any and all information which the Receiver obtains from any bank or brokerage house or any other party as a result or pursuant to this Order. Such information shall not be given to the other parties to this litigation or to any other parties other than the Receiver's professionals in his firm or Heinz Ickert or members of Mr. Ickert's firm without agreement of Capwill or Capwill & Co or an Order of the Court. Such information and the information on Exhibit A and B shall not be disclosed to Jenny Hale or Michelle Bryan without an order of the Court. This Order shall not prohibit Michelle Bryan access to those INSURANCE records necessary to administer premium payments, death benefit claims, and/or rescissions.

IT IS SO ORDERED.

Dated at Akron, Ohio, this 9th day of ~~October~~ November, 1999.

MAGISTRATE JUDGE JAMES S. GALLAS

APPROVED:

FREDERICK M. LUPER  (0019289)
Receiver and Attorney for Receiver
LUPER, SHERIFF & NEIDENTHAL
50 West Broad Street, Suite 1200
Columbus, Ohio 43215
Telephone: (614) 221-7663

DAVID C. TRYON  (0028954)
Attorney for Capwill
PORTER, WRIGHT, MORRIS & ARTHUR
1700 Huntington Building
925 Euclid Avenue
Cleveland, Ohio 44115
Telephone: (216) 443-9000

6

I hereby certify that this
instrument is a true and
correct copy of the original
on file in my office.
Attest: Geri M. Smith, Clerk
        U.S. District Court
        Northern District of Ohio

_____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


LIBERTE CAPITAL GROUP,

                        Plaintiff,              Case No. 5:99 CV 818

        -vs-
                                                O R D E R

JAMES A. CAPWILL, et al.,

                        Defendant.

KATZ, J.

        This matter is before the Court on the motions of the Receiver (Doc. No. 1250) and Alpha

Capital Group (Doc. No. 1234).

        By agreement entered into by and between the Receiver and Alpha, the foregoing matters

are settled and resolved as follows:

        1. William Wuliger ("Wuliger") is appointed the Receiver to operate, manage and

conduct all of the business affairs of Alpha.

        2. The Receiver appointed on behalf of Alpha shall post a bond in the sum of one million dollars

($1,000,000.00). The cost of obtaining a bond may be taxed as costs at the conclusion of this lawsuit,

on condition that the Receiver has faithfully and truly performed the duties of his office, duly accounted

for all monies and properties that have come into his hands, and abided by and performed all things that

he has been directed to do.



EXHIBIT
C

3. Wuliger shall have authority to directly deal with Alpha investors in regard to decisions and agreements relating to insurance policies, premiums, payment and other insurance issues.

4. Wuliger is ordered to use his best judgment to protect the rights of Alpha investors and to discharge his duties in a manner calculated to preserve the greatest monetary recovery for the maximum number of all Alpha investors.

5. Wuliger shall provide the court and parties with a status report on his activity as Receiver every sixty (60) days.

6. To the extent that Alpha investors are made whole by reinvestment in policies or otherwise, they will not share in proceeds of the main Receivership. Only Alpha investors who have an actual investment loss will be entitled to distributions, if any, from the main Receivership, in an amount which will be determined by the Court and subject to the final accounting of David Tantlinger.

Accordingly, Alpha's Emergency Motion (Doc. No. 1234) is granted and the Receiver's Motion (Doc. No. 1050) is granted to the extent that it relates only to Alpha Capital Group, LLC and remains viable as to the other named parties therein.

IT IS SO ORDERED.

_s/ David A. Katz_ _ _ _ _ _ _
DAVID A. KATZ
U. S. DISTRICT JUDGE

AUG  3 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LIBERTE CAPITAL GROUP, | ) | CASE NO.    5:99 CV 818 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. KATZ |
| | ) | |
| -vs- | ) | |
| | ) | |
| JAMES A. CAPWILL, et al., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

KATZ, J.

Pending before the Court is the General Receiver, the Alpha Receiver, and the Alpha Class's

request for an Order modifying the duties of the General and Alpha Receivers. Upon consideration and

for good cause shown, the joint motion for modification (Doc. No. 2229) is granted and the Court

modifies the duties of the General and Alpha Receivers as follows:

<u>Duties and Responsibility of the Alpha Receiver</u>

(1)    The General Receiver's duties and responsibilities, as defined by previous Court Orders,

except as set forth herein, will be transferred to and will be assumed by the Alpha Receiver.

(2)    The Alpha Receiver shall honor all existing agreements between the General  Receiver and

1


EXHIBIT

D

the Office of the United States Attorney relating to assets subject to the forfeiture order issued by the Court in United States v. Capwill, 5:01 CR 471, and currently in the custody of the Department of Justice.

(3)    Similarly, the Alpha Receiver shall honor all existing agreements between the General Receiver and judgment creditors in the case James Capwill v. Lynn Day, et.al., Case No. CV2000- 4-1512. In the event that any restrictions are imposed by the Government that would interfere with the Alpha Receiver's satisfaction of such agreements, he will pay those creditors from the General Receivership funds.

(4)    The Alpha Receiver, through NES, shall be responsible for maintaining separate accounts for Alpha, Liberte, and the General Receivership until such time as there is a final order allocating the resources in receivership among the two investor groups and all appeals are exhausted relative thereto. The Alpha Receiver shall also be responsible for tracking all expenses of Liberte and Alpha and allocating such expenses between the two investor groups accordingly. All costs directly attributable to the Liberte investors shall be deducted from the Liberte entitlement. All costs directly attributable to the Alpha investors will be deducted from the Alpha entitlement.

(5)    All supervision of litigation over which the General Receiver has had responsibility, i.e. brokerage cases, the Declaratory Judgment action, etc., shall be transferred to the Alpha Receiver, who shall also assume the role of the General Receiver.

(6)    The responsibility for maintaining, selling and managing the viatical portfolios of both Alpha and Liberte shall vest exclusively with the Alpha Receiver. The Alpha Receiver shall decide which policies subject to rescission efforts should be revisited for purposes of determining whether or not rescission is economically the most beneficial way of proceeding as it relates to specific policies. The Alpha Receiver

2

shall direct Liberte Class Counsel's current efforts to pursue rescission monies of Liberte-owned policies as detailed further infra, and reserves the right to take over such efforts if he determines that such action is necessary to increase the value of the Liberte portfolio for the benefit of Liberte investors. The Alpha Receiver will continue to service viatical portfolios with the aim of increasing the value of the portfolios and the funds recovered using the same methods that he has employed on behalf of Alpha investors.

(7)    The Alpha Receiver shall be responsible for defending all assets of the Receiverships whenever a party asserts a claim against the fund and for prosecuting those actions necessary to protect the Court's authority to determine issues in this and related suits against companies and individuals which contributed to the loss incurred by investors of either the Liberte or Alpha classes.

(8)    The Alpha Receiver shall continue to prosecute the bank cases at the same fee arrangement previously agreed upon.

(9)    The Alpha Receiver shall continue to prosecute the Lasko Lind matter at the same fee arrangement previously agreed upon.

(10)    The Alpha Receiver shall submit status reports to the court regarding all activities and resulting collections.

(11)    Likewise, the Alpha Receiver will compile and file monthly bills for fees and costs and pay any fees and costs associated with the administration of the Receivership.

(12)    The Alpha Receiver shall have the authority to enter into contracts when necessary to carry out the duties of the Receiver.

(13)    The Alpha Receiver shall monitor all expenses of NES and of all lawyers acting under his

3

supervision and/or direction.

(14)    The Alpha Receiver shall continue using the same methods of communication to convey current information to both Alpha and Liberte investors.

(15)    The Alpha Receiver shall generally to do all those things necessary to enhance and preserve the Receivership and shall continue to be compensated pursuant to the same terms and conditions previously established.

### Duties and Responsibilities of Liberte Class Counsel

(1)    Liberte Class Counsel shall pursue negotiations with Alpha Class Counsel to negotiate an agreement allocating receivership resources between the two investor groups.

(2)    Liberte Class Counsel shall turn over the Liberte Capital Group investor data base to NES in order to allow NES to complete its work for purposes of determining the various rights of individual Liberte investors.

(3)    Liberte Class Counsel will be responsible for concluding its rescission efforts under the direction and at the discretion of the Alpha Receiver and shall deposit any and all recoveries into NES, and shall be compensated pursuant to their existing fee arrangement.

(4)    Liberte Class Counsel and the Alpha Receiver shall assume the responsibility for supervising the "brokerage house litigation." In that regard, both Liberte Class Counsel and the Alpha Receiver reserve the right to revisit the fee arrangement that the General Receiver entered into with Buckingham Doolittle and Burroughs, LLP.

(5) Liberte Class Counsel is authorized to undertake any litigation on behalf of investors as directed

4

by the Alpha Receiver for which Liberte Class Counsel shall be compensated pursuant to a mutually acceptable fee arrangement.

(6)    Liberte Class Counsel shall be responsible for resolving disputes between competing Liberte investors.

(7)    Liberte Class Counsel shall be responsible for ensuring that Liberte investors receive notice of matters affecting their rights and entitlements arising out of this case, and for notifying Liberte investors of the telephone number for the investor line at NES so that Liberte investors can keep abreast as to the status of their accounts and the progress of counsel.

## Duties and Responsibilities of Alpha Class Counsel

(1)    Alpha Class Counsel shall pursue negotiations with Liberte Class Counsel to negotiate an agreement allocating receivership resources between the two investor groups.

(2)    Alpha Class Counsel is authorized to undertake any litigation on behalf of investors as directed by the Alpha Receiver for which Alpha Class Counsel shall be compensated pursuant to a mutually acceptable fee arrangement.

(3)    Alpha Class Counsel shall be responsible for resolving disputes between competing Alpha investors.

(4)    Alpha Class Counsel shall be responsible for ensuring that Alpha investors receive notice of matters affecting their rights and entitlements arising out of this case, and for notifying Alpha investors of the telephone number for the investor line at NES so that Alpha investors can keep abreast as to the

5

status of their accounts and the progress of counsel.

<u>Duties and Responsibilities of Northeast Escrow Services (NES)</u>

(1)     NES will be responsible for all escrow work and distributions under the direction of the Alpha Receiver.

(2)     A minimum of $500,000 shall always be maintained at NES for purposes of accomplishing the following functions: (a) the servicing of the portfolios (premiums, escrow fees); and (b) paying all attorneys fees and the costs of the receivership. NES shall be responsible for notifying the Alpha Receiver in the event that balances approach this threshold level.

<u>Duties and Responsibilities of Victor M. Javitch</u>

(1)     Mr. Javitch will remain responsible for all billing, charges and expenditures that occurred during the tenure of his receivership, pursuant to the existing orders of the Court. He will indemnify and hold harmless the Alpha Receiver for any errors that occurred in the General Receivership administration under his control.

(2)     The Alpha Receiver and Liberte Class Counsel's efforts to recover commissions and funds placed with former agents and brokers of Alpha and Liberte continue. As noted herein, the parties entered into private client arrangements with Javitch, Block & Rathbone to pursue recovery efforts from agents and brokers, and the parties intend for those arrangements to continue on the same terms, unaffected by the consolidation of receivership authority. Mr. Javitch will update and consult with the parties regularly on the status and needs of the project.

(3)     Mr. Javitch shall undertake any litigation on behalf of investors as directed by the

6

Alpha Receiver for which he shall be compensated pursuant to a mutually acceptable fee arrangement.

It is submitted that the foregoing reallocation of duties is in the interest of the investors of both Liberte and Alpha because it maximizes the ongoing projects of the Receivers and minimizes the costs associated therewith. Therefore, this reallocation is in the interest of judicial economy and benefits the parties to this action.

IT IS SO ORDERED.

_s/ David A. Katz_
DAVID A. KATZ
U. S. DISTRICT JUDGE

7

FEB 1 3 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

LIBERTE CAPITAL GROUP,

                        Plaintiff,                    Case No. 5:99 CV 818

        -vs-
                                                      O R D E R

JAMES A. CAPWILL, et al.,

                        Defendant.

KATZ, J.

    This matter is before the Court on Alpha's Motion to Protect Its Investors from Satellite litigation

(Doc. No. 1407). Presently, the motion remains unopposed. This Court has jurisdiction pursuant to 28

U.S.C. § 1331.

    Essentially, Alpha requests modification of the Order appointing the Alpha Receiver in order to

prevent the dissipation of funds or the expenditure of resources by Alpha in defense of litigation initiated

against Alpha, its property or the Alpha Receiver. Alpha correctly notes that when the original receiver

(Frederick Luper) was appointed by the Court in 1999, the order included a provision to enjoin similar

litigation against Viatical Escrow Services and/or Capital Fund Leasing and the Receiver himself. (Doc.

No. 132, p. 5-6.)

    The objective of the Receivership is to preserve and increase the estate for the benefit of all the

creditors, investors, owners and parties to this case. To that end, because such a provision will preserve

and protect assets the Court finds Alpha's request well taken. Accordingly, the Court grants Alpha's

Motion (Doc. No. 1407) and amends the Order of appointment (Doc. No. 1290) to include the

following:

EXHIBIT

tabbies

E

It is further ORDERED that all creditors, claimants, bodies politic, parties in interest, and all sheriffs, marshals, and other officers, and their respective attorneys, servants, agents, and employees, and all other persons firms and corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceedings in equity to foreclose any lien or enforce any claim against said Alpha Capital Group, LLC, its property or against the Alpha Receiver in any court. Such entities are further stayed from executing or issuing or causing the execution or issuance out of any Court of any writ, process, summons, attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon, any property owned by or in the possession of the said Receiver, and from doing any act or thing whatsoever to interfere with the Receiver in the discharge of his duties in this proceeding with the exclusive jurisdiction of this Court over said properties and said Alpha Receiver.

IT IS SO ORDERED.

_s/ David A. Katz_
DAVID A. KATZ
U. S. DISTRICT JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,                    Case No. 3:00 CV 7312

-vs-

O R D E R

J. RICHARD JAMIESON, et al.,

Defendant.

KATZ, J.

The Receiver has filed a Motion seeking the right to sell policies designated by the Government

as having been fraudulently obtained. Memoranda in support of that Motion have been filed by the

Receiver, the Investor Class, and Alpha Group, while memoranda in opposition have been filed by the

Government and Southwestern Life Insurance Company. The Court has reviewed all of those

memoranda and the attachments thereto. In addition, the Court heard oral argument on this issue at the

February 7, 2001 hearing.

Initially, it should be made clear what this Court is *not* adjudicating at this time; it is *not*

adjudicating the respective rights of any investor, the Receiver, any purchaser of policies from the

Receiver, or any insurer regarding any policy, in particular those policies sought to be marketed as to

which the Government asserts a defense of fraud on the insurance company may be asserted to avoid

EXHIBIT

F

payment. Those issues as to specified policies may be the subject of future litigation in this or other courts of competent jurisdiction.

Further, the Court is *not* making a determination of the legal propriety or validity of the positions of the parties (and non-parties) impacted by this ruling. The court is aware of the contention of the Investors and Alpha that, as between innocent parties, the investors and the insurers, the latter were in better position to determine the risk and should bear the loss. This Court through this ruling is *not* adjudicating that issue.

The issue before this Court is the right of the Receiver to market and sell policies asserted to have been fraudulently obtained to sophisticated investors who are given appropriate warning of the defenses which may be asserted by the insurers. The Court is aware of the contentions of the Government and Southwestern that the sale of such policies would continue to perpetuate a fraud on the insurance companies and thus adversely impact insurers. This order does not deprive the insurers of any defenses available against the Receiver or any transferee of the Receiver.

It is therefore ordered that the Receiver's Motion is hereby granted and he is free to market such policies under the following conditions:

(1) That the Receiver shall not market any policy which a court of competent jurisdiction has determined was issued as a result of fraud or has otherwise invalidated or voided.

(2) That any prospective purchaser is provided with notice that the Government and/or insurance companies have provided notice to the Receiver that said policy may have been issued as a result of fraud, and as a result thereof there may exist defenses which potentially could result in the avoidance of payment of death benefits or words of similar import.

2

(3) That there has been no notice of recission or cancellation delivered to the Receiver by any insurance company related thereto.

(4) That the Receiver include in every contract/agreement for the sale of policies covered by this order a provision requiring the purchaser to inform all subsequent buyers and/or investors of the history and risks attendant to each such policy.

Moreover, the Receiver shall be permitted to accept death benefits on any mature policy, providing he has not received a prior notice of recission or cancellation from any insurance company and that said policy has not been the subject of a prior order of any court of competent jurisdiction declaring such policy to be void due to fraud on the insurer.

IT IS SO ORDERED.


_s/ David A. Katz_____
DAVID A. KATZ
U. S. DISTRICT JUDGE

3

APR 19 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

LIBERTE CAPITAL GROUP, LLC, et al.,

                              Plaintiff,                    Case No. 3:99 CV 818

                -vs-
                                                           MEMORANDUM    OPINION
JAMES A. CAPWILL, et al.,

                              Defendant.

KATZ, J.

    This matter comes before the Court on Southwestern Life Insurance Company's

("Southwestern") motion to intervene (Doc. No. 997)in the above-captioned action, the General

Receiver's objection (Doc. No. 1006), the objection by the Intervening Plaintiff (Doc. No. 1008), and

Southwestern's reply thereto (Doc. No. 1012).  Also before the Court is the Alpha Receiver's motion

requesting a show cause order regarding Southwestern and its counsel (Doc. No. 2090), as well as

responses by Southwestern (Doc. No. 2144) and its counsel, John Schomer (Doc. No. 2141).  For the

reasons set forth below, both motions are denied.

### BACKGROUND



EXHIBIT

G

In October 2000, the Court authorized the General Receiver, Victor M. Javitch, to conduct sales of Liberte policies in furtherance of the best interests of the investors. (Doc. No. 777). This order was entered in the present action as well as the action in which the government seized Liberte's assets. *United States v. Jamieson*, Case No. 3:00CV7312 (Doc. No. 54). Thereafter, the issue of fraudulently procured policies was raised relative to the Court's October 16, 2000 Order regarding the Receiver's authority to sell policies.  The government placed its objections on the record regarding these "cleansheeted" policies recommending no further transfers and to have the Receiver rescind or surrender the policies for value. *Jamieson*, Doc. No. 80.  In a subsequent Order, the government's recommendations were adopted in part. *Jamieson*, Doc. No. 96. This issue was again revisited in the General Receiver's emergency motion for reconsideration on those policies designated as fraudulent. *Jamieson*, Doc. No. 101.

In the *Jamieson* action, Southwestern served notice that it advised the General Receiver that each of its policies in which the Receivership had an interest was being investigated for fraud. *Jamieson*, Doc.No. 111. In addition, Southwestern reserved its right to any and all defenses to liability as to those policies. *Id.* Subsequently, Southwestern attempted to intervene in the *Jamieson* litigation. *Jamieson*, Doc. No. 119. During a status conference on March 14, 2001, at which counsel for Southwestern was a participant, the Court denied the motion to intervene without prejudice and directed Southwestern to file its motion in the *Capwill*[1] litigation.

On March 26, 2001, Southwestern filed its motion to intervene herein.

---

[1] *Liberte Capital Group, LLC v. Capwill,* Case No. 5:99 CV 818 (N.D. Ohio).

2

### SOUTHWESTERN'S MOTION TO INTERVENE

*A. Intervention as of Right*

Intervention under the Federal Rules occurs either as of right or by permission. Fed. R. Ci v. P. 24. Intervention as of right, listed in Fed. Civ. P. 24(a), states as follows:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Sixth Circuit has adopted a four-part test which must be satisfied in order to establish intervention as a matter of right as follows:

> (1) timeliness of the application to intervene; (2) the applicant's substantial legal interest in the case; (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court.

*Stupak-Thrall v. Glickman,* 226 F.3d 467, 471 (6th Cir. 2000) (citations omitted). While the applicant bears the burden of establishing the right to intervene, *Linton v. Comm'n of Health & Env't,* 973 F.2d 1311, 1317 (6th Cir. 1992), Rule 24 is liberally construed and doubts are resolved in favor of the proposed intervenor. *Purnell v. Akron,* 925 F.2d 941, 950 (6th Cir. 1991). An inquiry under Rule 24(a) requires considering balancing these factors together rather than separately and favors granting intervention where the interests in favor of intervention outweigh those opposed. *See* 6 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 24.03[1][b] (3d ed. 2003). Furthermore, a Rule 24(a) inquiry should focus on the particular facts and procedural posture of the application.

3

A.    *Timeliness and Related Issues*

　　　The timeliness aspect of a motion to intervene is "evaluated in the context of all relevant

circumstances." *Stupak-Thrall v. Glickman* 226 F.3d at 472-473, citing *Jansen v. City of Cincinnati*,

904 F.2d 336, 340 (6th Cir. 1990).  The Sixth Circuit in *Stupak-Thrall* reiterated five factors to be

considered in this analysis as follows:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is
> sought; (3) the length of time preceding the  application during which the proposed
> intervenors knew or should have known of their interest in the case; (4) the prejudice to
> the original parties due to the proposed intervenors' failure to promptly intervene after they
> knew or reasonably should have known of their interest in the case; and (5) the existence
> of unusual circumstances militating  against or in favor of intervention.

*Id.*

　　　In consideration of the first prong, at the time Southwestern filed for intervention, this litigation was

nearly two years old.    While it was apparent that satellite litigation would ensue as an outgrowth of the

present action, the General Receiver's mandate here was to marshal assets with an eye toward ultimate

disbursement for the benefit of the investors.

　　　Turning to the purpose for which intervention is sought, Southwestern asserts it is "solely on the

issues concerning the Southwestern Life Insurance policies" and the General Receiver's "attempt[] to sell

void and canceled policies." Motion at p. 4.  However, this Court's Order of April 13, 2001, addressed

these concerns, in part, in the following manner:

> The issue before this Court is of the right of the Receiver to market and sell policies
> asserted to have been fraudulently obtained to sophisticated investors who are given
> appropriate warning of the defense which may be asserted by the insurers.  The Court is
> aware of the contentions of the Government and Southwestern that the sale of such
> policies would continue to perpetuate a fraud on the insurance companies and thus

4

adversely impact insurers. This order does not deprive the insurers of any defenses
available against the Receiver or any transferee of the Receiver.

*Jamieson*, Doc. No. 149. Moreover, in its Order, the Receiver was prohibited from marketing "any

policy of which a court of competent jurisdiction has determined was issued as a result of fraud or has

otherwise invalided or voided." *Id.* Specifically, the Order expressly states it is not an adjudication on the

rights of an insurer or the validity of the legal position of a party or non-party. As Southwestern is not

precluded from otherwise bringing actions or asserting defenses relative to its policies, its purpose in this

litigation does not strike this Court as necessary.

As to the length of time preceding their motion that the proposed intervenors should have known

about their interest in the case, the Receiver states Southwestern was aware of this litigation at least a year

in advance of its motion. The prejudice to the original parties would be significant if Southwestern were

allowed to intervene since it would only serve to unduly delay the case just as it stands poised to enter its

final stage. Moreover, intervention by Southwestern would open the door and other insurers would surely

want their positions advanced as well.

The unusual circumstances[2] in this action militate against intervention since the aim of this action, at

this juncture of the proceedings, is the continued marshaling of assets with an eye towards distribution to

the victimized investors. Again, to allow Southwestern to inject issues which can be addressed in other

forums would not serve the interests of the litigants herein.

---

[2]

The claims initially asserted against Defendant Capwill and his entities have essentially been resolved
with the General Receiver marshaling assets into the Receivership Estate for the benefit of the investors.
In addition, the Alpha Receiver is under a similar mandate albeit aimed at those policies held for the
benefit of the Alpha investors. The Liberte investors have been certified as a class and are represented
by class counsel herein. At this juncture of the proceedings, disbursement remains the final phase to this
litigation.

Having considered the five factors, this Court is of the view that intervention by Southwestern would only serve to expand an already complex action which is five years old and stands on the brink of entering its final phase, disbursement. In light of the fact that Southwestern is not prohibited from asserting its position and/or prior adjudications on its policies against those seeking to recover on them, intervention into the present action would not serve the interests of justice and only delay a final resolution for the present parties. Based upon these considerations, the Court finds Southwestern has not satisfied the timeliness requirement under Rule 24.

*B. Other Factors*

In addition, Southwestern's substantial legal interests are not impaired as the April, 2001 Order, indicated the Court was:

> . . . *not* adjudicating the respective rights of . . .any insurer regarding any policy, in particular those policies sought to be marketed as to which the Government asserts a defense of fraud on the insurance company may be asserted to avoid payment. Those issues as to specified policies may be the subject of future litigation in this or other courts of competent jurisdiction.
> Further, the Court is *not* making a determination of the legal propriety or validity of the positions of the parties (and non-parties) impacted by this ruling. The court is aware of the contention of the Investors and Alpha that, as between innocent parties, the investors and the insurers, the latter were in [a] better position to determine the risk and should bear the loss. This Court through this ruling is *not* adjudicating that issue.

*Jamieson*, Doc. No. 149 (emphasis in original). On the basis of these statements, Southwestern's ability to protect its interests is not impaired. Where there is a failure to meet any one of the four criteria for intervention as of right, intervention must be denied. *Stupak-Thrall*, 226 F.3d at 471.

In sum, as Southwestern has failed to demonstrate its entitlement to intervene in this action under Fed. R. Civ. P. 24(a), its motion to intervene is denied.

6

ALPHA RECEIVER'S MOTION FOR A SHOW CAUSE ORDER

The Alpha Receiver moves for an order requiring Southwestern and its attorney, John Schomer, to show cause why they should not be held in contempt of court. Both Southwestern and Schomer have filed separate responses.

A. Standard

A primary purpose of civil contempt sanctions is to enforce compliance with a court order. *See Downey v. Clauder*, 30 F.3d 681, 685 (6th Cir. 1994). Where the court finds that sanctions are appropriate, they may be imposed "solely to coerce future compliance with the court's order or to compensate for injuries resulting from noncompliance." *N.L.R.B. v. Howard Baer, Inc.*, 99 F.3d 1139, 1996 WL 490347, *17 (6th Cir. 1996) (Unpublished).

The party alleging civil contempt must prove by clear and convincing evidence that the respondent violated the court's prior order. *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998). The court must find that the party in contempt "violated a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Rolex Watch U.S.A., Inc.* 74 F.3d 716, 720 (6th Cir. 1996) (citation omitted).

B. Discussion

In this instance, the Alpha Receiver accuses Southwestern and its counsel with interfering with the functioning of the Receivership Estate and for failure to comply with this Court's orders. Specifically, the Receiver charges that following this Court's Order of July 17, 2002, Southwestern was recalcitrant at providing the necessary information and continues to wrongfully withhold recission dollars relative to Ross

7

and Patrick policies. The Alpha Receiver's memorandum and affidavit chronicle his efforts to gather

information and recission monies relative to these two policies.

A review of the Court's July 17, 2002 Order indicates that it was premised on the purpose of

allowing the Alpha Receiver to gather information from the relevant insurance companies and advised the

insurers as follows:

(1) That the Alpha Receiver, William T. Wuliger, Esq., has full, complete and
absolute right, title and interest to such policies as reflected in the attachment;

(2) Those insurance carriers whose names appear in the attachment shall recognize the authority
of the Alpha Receiver, William T. Wuliger, as absolute owner and beneficiary of the policies set
forth in the attachment, to act as full owner and custodian of those policies with the authority to
sell, transfer, convey or assign rights to said policies howsoever the Alpha Receiver deems fit,
consistent with this Court's orders.

(3) Those insurance carriers, whose names appear in the attachment, shall provide information
necessary for the Alpha Receiver to assess the value of the portfolio. The information, at a
minimum, shall include: (a) the named insured; (b) the name of the owner of the policy; (c) the
status of the policy; (d) the fact amount and value of the policy. The insurance carriers shall
provide this information within a reasonable time to the Receiver and shall forward information
relative to requests to the Receiver's agent, NorthEast Escrow Services LLC at 12550
Chillicothe Road, Chesterland, Ohio 44026 with respect to any of the policies of insurance on the
attached list.

(4) In the event that any insurance carrier fails to comply fully with this Order, the Court will
entertain the Alpha Receiver's motion for contempt and that company will be subject to
appropriate sanctions for said contempt, as determined by this Court.

(5) The Alpha Receiver shall serve a certified copy of this Order and attachment thereto to the
relevant insurance carrier from whom information is sought.

(Doc. No. 1658.)

The Alpha Receiver is correct insofar as the insurers were directed to provide specific information

relative to the insurance policies identified in the attachment to the Order. Alpha's Receiver does not

8

specify exactly what information Southwestern has refused to supply regarding the Patrick policy. However, Southwestern is correct that the July 17, 2002 Order does not require the insurers to turn over recission dollars. Most telling on this point is the Alpha Receiver's own memorandum opposing Southwestern's motion for intervention:

> The intervening plaintiffs respectfully submit that this is not the appropriate forum to resolve the question of whether Southwestern is free to disregard or rescind these insurance policies and whether, in the event of such disregard or recission, it is somehow entitled to refuse to return the accumulated premiums. Rather, those are issues which should be resolved - as they have in the past - in satellite litigation limited to those issues at such time as those issues actually arise.

(Doc. No. 1008, p.8.)

Therefore, as the Alpha Receiver has not established Southwestern or attorney Schomer's failure to comply with this Court's prior orders, his motion is not well taken. As noted in the discussion denying intervention, this Court has previously ruled it would *not* adjudicate the rights of insurers and that they retain defenses which may be asserted in satellite litigation. Those are issues to be resolved outside of this case *sub judice* as properly noted by the Alpha Receiver above.

## CONCLUSION

For the reasons aforementioned reasons, Southwestern's motion to intervene (Doc. No. 997) is denied. Additionally, the Alpha Receiver's motion for a show cause order (Doc. No. 2090) is denied.

IT IS SO ORDERED.

s/ David A. Katz
DAVID A. KATZ
U. S. DISTRICT JUDGE
