STATE OF OHIO            )
                                  )    SS:    AFFIDAVIT OF WILLIAM WULIGER
COUNTY OF CUYAHOGA   )

WILLIAM WULIGER, being first duly sworn, do avow and aver:

1)    I am a resident of the State of Ohio and I reside at _____, Bentleyville, Ohio.

2)    I am an attorney licensed to practice law in the State of Ohio. I maintain an office located at 1340 Sumner Court, Cleveland, Ohio 44115.

3)    I have never been to the state of Delaware, nor have I transacted any business within that state.

4)    On April 8, 1999, Liberte Capital Group, LLC ("Liberte"), a viatical settlement funding company, filed suit in the U.S. District Court for the Northern District of Ohio against its escrow agent, James A. Capwill, and two of his business entities, Viatical Escrow Services ("VES") and Capital Fund Leasing ("CFL"), in the matter captioned *Liberte Capital Group, LLC et al. v. James A. Capwill, et al.,* case no. 99 CV 818. Alpha Capital Group, LLC ("Alpha"), another viatical settlement funding company utilizing the escrow services of Capwill, intervened shortly thereafter naming additional defendants.

5)    On July 15, 1999, the federal court in Ohio placed CFL and VES in receivership. In the appointment Order, the federal court in Ohio asserted exclusive jurisdiction over the Receiver and the property within the Receivership, and enjoined all persons from commencing or continuing any action to enforce a claim against CFL, VES, the Receiver, or the property in the Receiver's custody and control, or from interfering with the Receiver's administration of the estate in any way. Since October 29, 2001, this receivership has been referred to as the "General Receivership."

6)    On November 9, 1999, the General Receivership was extended to include all insurance policies funded by investors of Liberte Capital Group or Alpha.

7)    On April 13, 2001, the federal court in Ohio issued an Order permitting the General Receiver to market policies designated as fraudulently obtained by the Department of Justice, provided the policies had not been previously rescinded by the insurer or adjudicated as fraudulent by a court of competent jurisdiction. The Order also created a limited exception to the injunction barring suits against the Receiver, permitting insurers to assert defenses against the Receiver or his transferee regarding their financial obligations pursuant to any policy within the receivership estate, provided they do so during the lifetime of the insured.

8)    On October 29, 2001, the federal court in Ohio also placed Alpha in receivership, appointing me as the Alpha Receiver and directing me to take direction and control of all of Alpha's business activities and functions. The Order granted me full authority and

**EXHIBIT**

1

ownership over all Alpha-owned policies, including Alpha policies previously adjudicated as assets of the General Receivership in the November 9, 1999 Order, and charged me with the responsibility of protecting the Alpha investors.

9)    On February 13, 2002, the federal court in Ohio issued an Order asserting exclusive jurisdiction over the Alpha Receiver and the property within the Alpha Receivership, and enjoining all persons from commencing or continuing any action to enforce a claim against Alpha, the Alpha Receiver, or the property in the Alpha Receiver's custody and control, or from interfering with the Alpha Receiver's administration of the estate in any way.

10)   On April 19, 2004, the federal court in Ohio reiterated its April 13, 2001 ruling, confirming that as the transferee of the General Receiver, the limited exception to the injunction barring suits against the Receiver applies to the Alpha Receiver and his transferees as well.  Accordingly, insurers are permitted to assert defenses against the Alpha Receiver or his transferee regarding their financial obligations pursuant to any policy within the Alpha receivership estate, provided they do so during the lifetime of the insured.

11)   On August 3, 2004, the federal court also transferred authority to me over the General Receivership, including full authority and ownership over all Liberte-owned policies.

12)   I am counsel of record for the defense in *Southwestern Life Insurance Company v. Willliam T. Wuliger,* Case No. 2004-04-2060 in the Court of Common Pleas for Summit County, Ohio.

13)   On March 16, 2005, the judge in *Southwestern Life Insurance Company v. Willliam T. Wuliger* held that the Default Declaratory Judgment invalidating Integon Life Insurance Co. policy no. 0030206470 insuring the life of Jeffrey D. Ross issued in *Security Life and Trust Company fka Integon Life Insurance Corporation v. Estate of Jeffrey D. Ross*, Case No. 2000 05 2223 in the Court of Common Pleas for Summit County, was void *ab initio.* A copy of that decision is attached hereto as Attachment 1.

FURTHER AFFIANT SAYETH NOT.

_____
WILLIAM T. WULIGER

Given under my hand and seal of office this _23_ day of March 2005.

_____
NOTARY PUBLIC

My Commission expires: _____

LAURA A. DAVIS
NOTARY STATE OF OHIO
MY COMMISSION EXPIRES
DECEMBER 7, 2009

2

MAR 16 2005

JIANA ZALESKI
2005 MAR 15 PM 2:54
SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS

COUNTY OF SUMMIT

| | | |
|---|---|---|
| SOUTHWESTERN LIFE INSURANCE CO. | ) | CASE NO. CV 04 04 2060 |
| | ) | |
| Plaintiff | ) | JUDGE SHAPIRO |
| | ) | |
| -vs- | ) | |
| | ) | |
| WILLIAM T. WULIGER | ) | **O R D E R** |
| | ) | |
| Defendant | ) | |

This matter comes before the Court upon the motion of Plaintiff for Summary

Judgment against Defendant William T. Wuliger. Plaintiff sought Summary Judgment on its

Complaint for Declaratory Judgment on October 29, 2004. Plaintiff's Complaint for Declaratory

Judgment sought to enforce a final default judgment entry in the action of <u>Security Life and</u>

<u>Trust Insurance Corp. fka Integon Life Insurance Corp. v. Estate of Jeffrey D. Ross</u>, Case No.

CV 2000-05-2223. The 2000 judgment entry declared that Defendant was barred from

recovering benefits under the Ross policy, entitled Plaintiff to judgment that the policy was

properly and validly cancelled or rescinded, and stated that Plaintiff owed no further rights,

duties, obligations, or insurance to the Defendants. After Plaintiff filed its Motion for Summary

Judgment, Defendant Wuliger filed an Answer denying the essential allegations of the complaint

and raising several reasons why the Declaratory Judgment filed in 2000 should not stand.

**EXHIBIT**
I
Attachment 1

Summary Judgment, *Civ.R. 56*, is a procedural device designed to terminate litigation and to avoid a formal trial where there is no genuine issue of material fact to be tried and the moving party is entitled to judgment as a matter of law. The Court must follow the standard set forth in *Civ.R.56*, which specifically provides that before Summary Judgment may be granted, "[i]t must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and view such evidence most strongly in favor of the party against whom the motion for Summary Judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.. See also, Norris v. Ohio Std. Oil Co., (1982), 70 Ohio St.2d 1. The moving party has the burden of showing that there is no genuine issue of material fact as to the critical issue. The opposing party has a duty to submit affidavits or other materials permitted by *Civ.R. 56* to show that a genuine issue for trial exists. See Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

Upon review, the Court finds that genuine issues of material fact remain and that Summary Judgment is not appropriate for the following reasons: Initially, Ohio Revised Code §2721.12 requires that "when declaratory relief is sought...all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding" and "a declaration shall not prejudice the rights of persons who are not made parties to the action or proceeding." More specifically, it has been held that "[t]he absence of a necessary party is a jurisdictional defect that precludes any declaratory judgment. Thus, failure to join necessary parties renders any declaration by the court void." Cerio v. The Hilroc Condominium Unitowners Ass'n., Inc., 2004 Ohio 1254, at ¶ 10. Alpha was a necessary party to

to the 2000 Declaratory Judgment and Default Judgment actions as they had a legitimate interest in the policy at issue. The Declaratory Judgment and resulting Default Judgment are void ab initio due to Plaintiff's failure to join Alpha as a necessary party.

Furthermore, there exists the question of federal jurisdiction. On November 9, 1999, the U.S. District Court for the Northern District of Ohio adjudicated the Ross policy to be an asset of the Receivership estate. This afforded the District Court exclusive jurisdiction over the property unless the Court gave its express consent that a matter determining the rights and obligations under the policies could be heard elsewhere. Barton v. Barbour (1881), 104 U.S. 126. Alpha argues that the policy was *in custodia legis* when Southwestern instituted its declaratory action on May 18, 2000. Rights dealing with property that is *in custodia legis* must be resolved by the court that has custody and control over the property, unless express consent is given to another court. State ex rel. Spires v. Allread (1927), 117 Ohio St. 584. Express consent was not given to the Court of Common Pleas for the 2000 case. Thus, the policy was the property of the District Court, and the Court of Common Pleas did not have jurisdiction to make any determinations regarding the property.

Finally, it appears the Court of Common Pleas also lacked personal jurisdiction over Mr. Ross and his estate. International Shoe Co. v. Washington (1945), 326 U.S. 310, 316, held that a defendant, who is not present within the jurisdiction of the Court, must have minimum contacts with the jurisdiction such that the suit would not offend "traditional notions of fair play and substantial justice." There is no evidence to show that Mr. Ross had any contact with Ohio to justify jurisdiction. Mr. Ross was a resident of the state of Georgia. Mr. Ross listed his address on his application for insurance as Lithonia, Georgia. Therefore, the Court did not have personal jurisdiction over Mr. Ross.

- 3 -

In summation, Summary Judgment is not proper in this case due to the invalid Default Judgment that was entered in the 2000 case based on the fact that a necessary party was not joined. Furthermore, neither personal nor subject matter jurisdiction was proper in the 2000 case.

Wherefore, it is **ORDERED** that Defendant's Motion for Summary Judgment is hereby **DENIED.**

A status hearing is scheduled for **April 21, 2005 at 8:15 a.m.**

**IT IS SO ORDERED.**

_____
JUDGE MARVIN A. SHAPIRO

cc: Attorney John B. Schomer
    Attorney William T. Wuliger
    Attorney Stephen C. Baker

ctm
04-2060-d

- 4 -